[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The first of the above captioned cases is an administrative or record appeal by the plaintiff, School Properties Associates, a general partnership, from a decision by the defendant, the Westport Conservation Commission. The second of the above appeals is a declaratory judgment action; Practice Book § 17-54; CT Page 13231 seeking to invalidate a certain ordinance enacted by the defendant, town of Westport.[1]
The property in issue consists of approximately 56 acres of unimproved land situated between the Newtown Turnpike and Partrick Road in Westport. The land is in the OSRD zone, "open space residential district," which theoretically would permit 100 four-bedroom units with sewers. Approximately 49 of these acres are subject to regulation under both the Westport Inland Wetlands and Watercourses Ordinance and the Waterway Protection Line Ordinance,[2] both of which are administered by the defendant, the Westport Conservation Commission.[3] There are approximately 39 acres of wetlands and watercourses and 10 acres of wetland setback areas. The uplands at the subject premises consist of approximately 17 acres. The property is crossed by Poplar Plains Brook, which ultimately runs into the Saugatuck River.
The plaintiff applied in March, 1991 to the defendant Commission for authority to conduct regulated activities on property subject to both ordinances in order to construct 70 clustered single family condominium units.[4] At the public hearing on August 6, 1991, the plaintiff eliminated unit #45, which encroached directly upon the wetlands area. The proposal, according to the plaintiff, would have "disturbed and/or filled .51 acres of the 38.6 acres of designated wetlands."
The defendant held several public hearings and on August 6, 1991 approved the application but allowed only 25 units to be constructed. The plaintiff then appealed to the Superior Court as authorized by General Statutes § 22a-43.
The plaintiff alleges in its complaint that the decision by the defendant resulted in an unconstitutional taking of its property without compensation and in violation of its rights to due process under federal and state laws. The plaintiff further alleges that the decision caused an "inverse condemnation" of its property and was not supported by the evidence presented to the defendant Commission. At a hearing before this court, the plaintiff, as owner of the subject premises, was deemed to be aggrieved for the purpose of pursuing this appeal.
In its brief, the plaintiff, while not pressing the constitutional issues, summed up its position in these sentences: "the Conservation Commission's decision must be reversed because CT Page 13232 it improperly delegated the duty of deciding the appellant's application to its staff. The record is clear and uncontroverted that this Commission merely rubber stamped the staff work." The plaintiffs second contention is that the record does not contain any substantial evidence that the units sought to be constructed at the subject premises would have any adverse impact upon the wetlands.
It is well known that the role of the Superior Court is not to determine what is most "just" in the court's opinion in terms of the owner, the immediate neighborhood, the municipality or the state. Samperi v. Inland Wetlands Agency, 226 Conn. 579, 587,628 A.2d 1286 (1993). "The question is not whether the trial court would have reached the same conclusion, but whether the record before the [commission] supports the decision reached." Calandrov. Zoning Commission, 176 Conn. 439, 440, 408 A.2d 229 (1979). This obligation involves examining the record returned by the defendant Commission in order to determine whether there is a substantial basis of fact from which the defendant could have concluded as it did. It is also axiomatic that if even just one reason given by the defendant finds support in the evidence, then the agency's decision must be affirmed. Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 539-40, 525 A.2d 990 (1987).
The first contention of the plaintiff is that the defendant, by adopting its staffs "Draft Findings" for both applications, and then ultimately adopting its "Draft Resolution," illegally delegated its duty to decide the applications of the plaintiff under both the Inland Wetlands and Watercourses Regulations and the Waterway Protection Line Ordinance. First, it is well recognized that any agency may seek and obtain "technical and professional assistance" from any source, including its own staff. Pizzola v. Planning Zoning Commission, 167 Conn. 202,208, 355 A.2d 21 (1974). Second, the director of the Conservation staff, Francis Pierwola, testified in her deposition that it was standard practice for her to prepare draft findings and a draft resolution for members of the defendant Commission. The agency was free to change the drafts, according to the deponent. "They amended both the draft findings and the draft resolution as they saw fit. . . . It was, like I said, an ongoing process. The staff report was augmented from time to time." Third, the transcript of the August 6, 1991 hearing, when the application was approved but with substantially fewer units than requested, indicates clearly that the defendant had before it the draft findings and that such findings were approved. There was not a great deal of discussion CT Page 13233 by members of the defendant Commission at that hearing before the findings were adopted and a vote was taken on the draft resolution. That does not prove that the defendant was merely "rubber stamping" its staff. The members of the defendant Commission had conducted three public hearings in May, June and July of 1991, the transcripts of which total early 300 pages. There was a great deal of discussion at all three hearings. The defendant agreed with the draft findings of the staff and its own consultant that 70 units, as proposed by the plaintiff, would violate the town's regulations.
The plaintiff, therefore, has not proved its contention that the defendant illegally delegated its authority to its staff. The latter prepared drafts and the defendant duly adopted the proposed findings and resolutions. The court cannot find anything illegal or unreasonable about that procedure. "[C]ourts must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in their actions." Samperi v. InlandWetlands Agency, supra, 226 Conn. 596.
In terms of the plaintiff's second contention, the issue is whether the record supports the ultimate conclusion that only 25 units may be constructed on the subject premises. The defendant Commission, in a notice to the plaintiff dated August 12, 1991, wrote that the lesser number of units was found to be "consistent with the Regulations for the Protection and Preservation of Inland Wetlands and Watercourses of Westport." In addition, the defendant, as indicated previously, adopted the draft findings and resolution prepared by its staff. These findings support the ultimate conclusion that only 25 units should be built in order to carry out the purposes of the two ordinances.
The draft findings for the wetlands application include the following: (1)45 of the 70 proposed units were located within the 35 foot wetlands setback for new dwellings, and that "encroachment is further increased" by patios, lawns, stonewalls and biofilters; (2)permanent displacement of wildlife would occur by the proposal to build "in almost every upland area on the site;" (3) the construction of a certain four units would result in "wetlands loss;" (4) water quality would be adversely affected; (5) there were problems with respect to sedimentation and erosion control because of "the extremely close proximity of the construction activity to the wetlands over much of the site;" (6)the project would cause a loss of .26 acres of regulated CT Page 13234 wetland area, and 1.33 acres of regulated setback area by reason of "direct encroachment, excavating and construction;" and (7) the application is not consistent with the "goals and policies set forth in Section 1.3 of the Regulations and Section 22a-36 of the Connecticut General Statutes."[5]
The defendant Commission adopted these draft findings and then voted in accordance with the draft resolution to permit construction of 25 units but to deny the remaining 44 specifically enumerated units "due to their inconsistency with the Regulations for the Protection and Preservation of Wetlands and Watercourses of Westport." The chairwoman of the defendant Commission stated that, after considering the alternatives of approving the project as proposed, or rejecting it in its entirety, she moved that: "on the basis of the findings, which were adopted on 8/6/91, to approve in part with conditions application IWW-4214-91 to permit construction of 25 residential units and attendant facilities on property located at Newtown Turnpike and Partrick Road."[6]
It is apparent that the defendant Commission eliminated proposed units that intruded into the required 35 foot setback from the wetlands.[7] It is very clear that a wetlands agency may impose valid setback requirements. Cioffoletti v. Planning Zoning Commission, 209 Conn. 544, 558, 552 A.2d 796 (1989)[8]
("[a]ctivity that occurs in nonwetlands areas, but that affects wetlands areas, falls within the scope of regulated activity"). At the May 28, 1991, hearing the chairwoman referred to 40 proposed units that were "at least half way into the setback, units 41-44, 69, 70, 25-30, 32-34, 36 and 37, 40, 6, 9-16, 1, 2 and 5, 45, 49, 55-59, 62-64, 66." The applicant's attorney stated: "We don't deny it." These were the units that were eventually eliminated. At the hearing on June 11, 1991, the chairwoman referred to these units by saying: "Quite a few of [the proposed units] are at least half way into the setbacks. Some of them come even within the 15 foot setback which is for other lesser disturbances so some are quite close." The plaintiff's engineer, in discussing the revised proposal at the July 9, 1991 hearing, stated: "In terms of setback . . . with this application we are effecting 1.33 acres. That breaks down to 27,497 square feet of residences that are in the setback areas. Within the 15 foot setback for residence disturbance we are down to 270 square feet. Roads and drives have increased slightly to 10,195 square feet simply because we have less wetland CT Page 13235 encroachment therefore more driveway encroachment. Roads, alteration or disturbance within 15 feet, 14,398 square feet. We have still the detention pond area in this area here which is 5, 140 square feet and the gazebo's and the footbridge are 655 square feet, totaling 58,155 square feet. . . ."
The defendant's staff also prepared draft findings with respect to the Waterway Protection Line Ordinance as follows: (1) the proposed filling involves wetlands soils and "does not provide for maintenance and prevention of the natural resources and ecosystems of the waterway;" and (2) the storm drainage proposal is not adequate to control "potential adverse impact to water quality."
Based on these proposed findings, which the defendant adopted at its August 6, 1991 meeting, the plaintiffs proposal was approved, but again after eliminating all but 25 units. The balance of the resolution was similar to the one adopted with respect to the wetlands regulations. As indicated previously, there was very little discussion at the final meeting in August, 1991, but the chairwoman did indicate that the findings were being summarized for the public because "the Commission has read these."
It is further noted that the defendant discussed the proposal at several prior hearings at which a number of people made presentations. For example, on May 28, 1991, the defendant Commission heard from IEP, Inc., consulting environmental scientists, retained by the defendant to evaluate the proposed development. IEP reported that: "The proposed layout indicates that 50 structures (48 residential units and 2 other structures — the recreational center and pools), totaling over 71% of the project units, are to be located within the required 35 foot wetland setback for single-family residences. Many of these (approximately 43 units) are directly abutting or are within 5 to 10 feet of the additional 15 foot wetland setback `for any disturbance. . . .' Nine of these units encroach similarly in the 15 foot setback of the WPL 25-year flood plain. . . . The cumulative impacts of early 100% of the wetland edge over the entire site for structures, grading, roadways, lawns, patios, walls, and fences, and outlet structures, with `biofilters' may be of extreme limitation to the wildlife species seeking upland shelter and food, unobstructed passage to other areas, and other requirements. . . . Additionally, setback functions such as buffering of the adjacent wetlands, both physically (vegetation CT Page 13236 and open terrain) and biochemically (soil buffering and filtration) will be diminished if not actually becoming a problem source (e.g., fertilizers, pesticides, trash, human disturbance, etc.)"
Thus, there is substantial evidence in the record to support the defendant's conclusions. "Substantial . . . evidence is that which carries conviction. It is such evidence as a reasonable mind might accept as adequate to support a conclusion. It means something more than a mere scintilla and must do more than create a suspicion of the existence of the fact to be established."Board of Education v. Commission on Human Rights Opportunities, 176 Conn. 533, 538, 409 A.2d 1013 (1979). Substantial evidence exists if "the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred." Office of Consumer Protection v. Departmentof Public Utility Control, 246 Conn. 18, 36, 716 A.2d 78 (1998).
Therefore, judgment enters dismissing the plaintiffs appeals both in the first of the above captioned appeals regarding the Inland Wetlands and Watercourses ordinance, and in docket CV 91 0121544 which involves the Waterway Protection Line Ordinance.
The second of the above captioned appeals seeks a declaratory judgment that the Inland Wetlands and Watercourses Ordinance and the Waterways Protection Line Ordinances are unconstitutional. It is well recognized that in challenging the constitutionality and legality of zoning regulations, a plaintiff bears "the heavy burden of proving their unconstitutionality beyond a reasonable doubt." Beacon Falls v. Posick, 212 Conn. 570, 585, 563 A.2d 285
(1989). Moreover, such regulations "enjoy a presumption of constitutionality." Id. The test of illegality is whether the regulation is rationally related to the protection of the public health, safety and general welfare of the community. Id., 583. "It can hardly be disputed that wetlands constitute a natural resource of the this state and that the purpose for enacting § 22a-16 was to prevent their unreasonable pollution, impairment or destruction." Lewis v. Planning ZoningCommission, 49 Conn. App. 684, 692-93, 717A.2d 246 (1998). The plaintiff has not met this heavy burden,[9] and hence judgment enters in favor of the defendant with regard to the request for a declaratory judgment in docket CV 91 0119691.
So Ordered. CT Page 13237
Dated at Stamford, Connecticut, this 27th day of September, 1999.
William B. Lewis, Judge.