WALTER LEWIS *v.* PLANNING AND ZONING
COMMISSION OF THE TOWN OF
CLINTON ET AL.
(AC 16316)

O'Connell, C. J., and Dupont and Shea, Js.

Argued November 3, 1997—officially released August 11, 1998

*Norman J. Voog*, with whom, on the brief, was *Christopher J. Molyneaux*, for the appellant (plaintiff).

*Philip S. Walker*, with whom were *Tricia A. Haught* and *Diane C. Bellantoni*, for the appellee (defendant Chelsea G.C.A. Realty Partnership, L.P.).

*Patricia A. Horgan*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Joseph Rubin*, assistant attorney general,

for the appellee (defendant commissioner of environmental protection).

SHEA, J. This is a companion case to *Lewis* v. *Swan*, 49 Conn. App. 669, 716 A.2d 127 (1998). The complaints in both cases bear the same date, and both actions were dismissed in the same proceeding for lack of subject matter jurisdiction pursuant to motions to dismiss filed in each case. In this action, the plaintiff, Walter Lewis, seeks to invalidate the permit issued to the defendant Chelsea G.C.A. Realty Partnership, L.P. (Chelsea), by the Clinton inland wetlands and conservation commission (wetlands commission) and the approval of the site plan granted by the Clinton planning and zoning commission (zoning commission) relating to Chelsea's construction of the shopping center in Clinton that is the subject of *Lewis* v. *Swan*, supra, 669.

The complaint alleges in the first count that both the inland wetlands permit and the site plan approval were defective because they were based on maps that did not accurately depict the boundaries of the wetlands that would be destroyed or disturbed in the construction of the shopping center, that Chelsea knew or should have known of the discrepancies between the actual wetlands as shown on the official map adopted by the wetlands commission in 1986 and the wetlands shown on the maps submitted by Chelsea in support of its applications to both town agencies, and that Chelsea, without a lawful permit as required, is now conducting regulated activities related to construction of the shopping center on land classified as wetlands by the official map of the Clinton wetlands boundaries.[1]

The second count incorporates the first count and adds five paragraphs stating that both the zoning commission and the wetlands commission were informed

---

[1] The complaint is dated July 12, 1996, and the shopping center opened for business in September, 1996.

at the public hearings relating to Chelsea's site plan and wetlands permit applications that the wetlands boundaries on the maps of Chelsea's property were inaccurate and inconsistent with those shown on the official Clinton wetlands map adopted in 1986 pursuant to General Statutes § 22a-42a (b),[2] that Chelsea deliberately or with gross negligence insisted that its maps showed the wetlands boundaries accurately and thus misled those town agencies into approving the applications when a substantially larger area of wetlands would be disturbed by the shopping center construction than Chelsea had indicated, and that Chelsea's construction activities in the wetlands were contrary to law.

The third count incorporates the second count and adds two additional paragraphs alleging that both the zoning commission and the wetlands commission knew or reasonably should have known that Chelsea's site plan was not consistent with the wetlands boundaries established in 1986 and negligently or wilfully refused

---

[2] General Statutes § 22a-42a (b) provides in relevant part: "No regulations of an inland wetlands agency including boundaries of inland wetland and watercourse areas shall become effective or be established until after a public hearing in relation thereto is held by the inland wetlands agency, at which parties in interest and citizens shall have an opportunity to be heard. Notice of the time and place of such hearing shall be published in the form of a legal advertisement, appearing in a newspaper having a substantial circulation in the municipality at least twice at intervals of not less than two days, the first not more than fifteen days nor less than ten days, and the last not less than two days, before such hearing, and a copy of such proposed regulation or boundary shall be filed in the office of the town, city or borough clerk as the case may be, in such municipality, for public inspection at least ten days before such hearing, and may be published in full in such paper. A copy of the notice and the proposed regulations or amendments thereto, except determinations of boundaries, shall be provided to the commissioner at least thirty-five days before such hearing. Such regulations and inland wetland and watercourse boundaries may be from time to time amended, changed or repealed, by majority vote of the inland wetlands agency, after a public hearing in relation thereto is held by the inland wetlands agency, at which parties in interest and citizens shall have an opportunity to be heard and for which notice shall be published in the manner specified in this subsection. . . ."

to comply with the statutes of the state and also the wetlands regulations of the town for changing the established wetlands boundaries.[3]

Chelsea filed a "motion to dismiss and/or strike" the complaint on the grounds of lack of subject matter jurisdiction and "for failing to state a claim which is legally sufficient."[4] The trial court granted both motions in the same order. In granting Chelsea's motion to dismiss, the trial court took the same view of the complaint as it had in *Lewis* v. *Swan*, supra, 49 Conn. App. 669, that the plaintiff was attempting belatedly to raise issues that he should have raised at the hearings on Chelsea's applications for approval of its site plan and for a wetlands permit or in an appeal from those determinations and, thus, had failed to exhaust available administrative remedies. The court also concluded that the plaintiff was making a collateral attack on the decisions of the two administrative agencies involved.

I

The characterization of the complaint as a collateral attack on the determinations of the zoning commission and the wetlands commission is incorrect.[5] The com-

---

[3] The complaint also contained a fourth count claiming that Chelsea was constructing a storm sewer drainage system that would discharge contaminated water into the Indian River, which flows into Long Island Sound, without the required discharge permit from the state department of environmental protection. The plaintiff has not briefed this claim and must be deemed to have abandoned it for the purpose of this appeal. *Mather* v. *Griffin Hospital*, 207 Conn. 125, 129 n.2, 540 A.2d 666 (1988); *Rodriguez* v. *Mallory Battery Co.*, 188 Conn. 145, 149, 448 A.2d 829 (1982).

[4] The motion to strike does not comply with Practice Book (1998 Rev.) § 10-41, which requires that such a motion "shall distinctly specify the reason or reasons for each such claimed deficiency." Chelsea filed a memorandum in support of the motion, raising its claim that the complaint did not adequately allege standing in accordance with General Statutes § 22a-216. Despite these procedural deficiencies, we consider the issue of standing in part II of this opinion.

[5] A "collateral attack" on a judgment is "an attempt to avoid, defeat, or evade it, or deny its force and effect, in some incidental proceeding not

plaint in this action attacks the orders approving the site plan and the wetlands permit applications directly, not collaterally. The plaintiff claims that neither of those agencies is empowered to change the wetlands boundaries established pursuant to § 22a-42a (b) without first conducting a separate proceeding under that statute for the purpose of revising the original boundaries and that the site plan approval and permit processes do not satisfy the statutory requirements for a wetlands boundary change, particularly its notice provisions.[6] The statute provides in part that "[s]uch inland wetland and watercourse boundaries may be from time to time amended, changed or repealed, by majority vote of the inland wetlands agency, after a public hearing in relation thereto is held by the inland wetlands agency, at which parties in interest and citizens shall have an opportunity to be heard and for which notice shall be published in the manner specified in this section. . . ." The plaintiff also relies on provisions of the Clinton inland wetland regulations authorizing the commission to amend regulated area maps "only" in accordance with the procedures of § 22a-42a (b) and requiring any property owner who disputes the designation of any part of his land as a regulated area on the wetlands map to petition the commission to change the designation.[7] The complaint may reasonably be construed as

provided by law for the express purpose of attacking it." Black's Law Dictionary (6th Ed. 1990). On the other hand, "[a] direct attack on a judgment or decree is an attempt, for sufficient cause, to have it annulled, reversed, vacated, corrected, declared void, or enjoined, in a proceeding instituted for that specific purpose, such as an appeal, writ of error, bill of review, or injunction to restrain its execution; distinguished from a collateral attack, which is an attempt to impeach the validity or binding force of the judgment or decree as a side issue or in a proceeding instituted for some other purpose." Id.; see *Smith* v. *F. W. Woolworth Co.*, 142 Conn. 88, 93, 111 A.2d 552 (1955); *Miller* v. *McNamara*, 135 Conn. 489, 496, 66 A.2d 359 (1949).

[6] See footnote 1.

[7] Section 3 of the Clinton inland wetlands regulations provides in relevant part: "3.2 The Commission shall establish or amend regulated area maps only in accordance with the procedures of Section 22a-42a of the General Statues, as amended.

a challenge to the authority or subject matter jurisdiction of the zoning and the wetlands commissions to revise effectively the boundaries of the wetlands on Chelsea's land without following the procedures prescribed by § 22a-42a (b) and the town wetlands regulations. The prayer for relief seeks a declaratory judgment that the site plan approval and the wetlands permit are invalid because of the failure to comply with the requirements of § 22a-42a (b) for changing a wetlands boundary and also demands an injunction. The complaint alleges intentional fraud on the part of Chelsea in obtaining the site plan approval and the wetlands permit as an additional ground for invalidating those administrative determinations.

The lack of proper notice of a hearing before a zoning board of appeals has been held to constitute a jurisdictional defect that invalidates the grant of a zoning variance, despite the failure of the plaintiff to appeal therefrom within the time limit. *Smith* v. *F. W. Woolworth Co.*, 142 Conn. 88, 93–95, 111 A.2d 552 (1955). "Equity can always give relief, in an independent action, to one whose property rights are threatened under a void order of an administrative board." Id., 93; see also *Upjohn Co.* v. *Zoning Board of Appeals*, 224 Conn. 96, 101, 616 A.2d 793 (1992); *Carpenter* v. *Planning & Zoning Commission*, 176 Conn. 581, 598, 409 A.2d 1029 (1979); *DiCamillo* v. *Clomiro*, 174 Conn. 351, 353–54, 387 A.2d 560 (1978); *Moscowitz* v. *Planning & Zoning Commission*, 16 Conn. App. 303, 313, 547 A.2d 569 (1988). Fraud in the procurement of a judgment, when

"3.3 Any property owner who disputes the designation of any part of his or her land as a regulated area on the Inland Wetlands and Watercourses Map, may petition the agency to change the designation. All petitions for a map change shall be submitted in writing and shall include all relevant facts and circumstances which support the change. The petitioner shall provide proof that the designation is inapplicable. Documentation in accordance with Section 14 of these regulations may be required of the property owner when the agency requires an accurate delineation of regulated areas."

it can be established, is another recognized ground for overturning a judgment that would otherwise be final. *Miller* v. *McNamara*, 135 Conn. 489, 495–96, 66 A.2d 359 (1949); 2 Restatement (Second), Judgments § 70 (1) (b), comment (c), pp. 180–82 (1982).

We are not obliged to resolve the merits of the allegations of the complaint in reviewing the propriety of granting the motion to dismiss, nor can we do so on the record before us. A motion to dismiss can be granted only for lack of jurisdiction. Practice Book (1998 Rev.) § 10-30. We disagree with the trial court's conclusion that this case should be dismissed for lack of subject matter jurisdiction because of the failure of the plaintiff to appeal from the administrative determinations that the complaint challenges as invalid. "A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it." *Monroe* v. *Monroe*, 177 Conn. 173, 185, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979). The plaintiff's claim that the challenged administrative orders are void unquestionably falls within the jurisdiction of the superior court, which does not lack competence to decide it. *Smith* v. *F. W. Woolworth Co.*, supra, 142 Conn. 93–95.

## II

The complaint alleges that the plaintiff has standing to bring this action pursuant to General Statutes § 22a-16, which provides in part that "any person . . . may maintain an action in the superior court . . . for declaratory and equitable relief . . . for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction . . . ." The defendant Chelsea challenges on appeal the sufficiency of the allegations of the complaint to confer standing on the plaintiff and claims that no facts are set forth to indicate that

Chelsea's activities are likely to result in "unreasonable pollution" of any natural resource. Although this ground was not raised in the motion to dismiss that was granted, the lack of standing to bring an action may be raised on appeal or at any point in the proceeding.[8] *Tomlinson v. Board of Education*, 226 Conn. 704, 717, 629 A.2d 333 (1993).

A complaint does not sufficiently allege standing by merely reciting the provisions of § 22a-16, but must set forth facts to support an inference that unreasonable pollution, impairment or destruction of a natural resource will probably result from the challenged activities unless remedial measures are taken. *Mystic Marinelife Aquarium, Inc.* v. *Gill*, 175 Conn. 483, 502, 400 A.2d 726 (1978). In addition to the invocation of the statute, the plaintiff alleges that (1) in 1986, the wetlands commission established the boundaries of the wetlands area contained within the land on which Chelsea subsequently has been constructing a shopping center, (2) Chelsea's application for a permit to conduct regulated activities on the wetlands portion of its land indicated that a significantly smaller wetlands area would be affected by the shopping center construction than appears from the official wetlands map, (3) changes in the boundaries of wetlands areas shown on that map can be made only in accordance with § 22a-42a (b), which requires a properly noticed public hearing for that purpose, and (4) Chelsea is currently conducting construction and excavation activities within the boundaries of land classified as wetlands pursuant to statute.

It can hardly be disputed that wetlands constitute a natural resource of this state and that the purpose for enacting § 22a-16 was to prevent their unreasonable "pollution, impairment or destruction." A motion to

---

[8] See footnote 4.

dismiss "admits all well pleaded facts, the complaint being construed most favorably to the plaintiff." (Internal quotation marks omitted.) *Duguay* v. *Hopkins*, 191 Conn. 222, 227, 464 A.2d 45 (1983). We construe the complaint in this action to allege that Chelsea's construction activities within the portion of its land designated as wetlands on the map adopted in 1986 are impairing or destroying those wetlands. Any impairment or destruction of such a natural resource would be "unreasonable" if it is occurring unlawfully, as the plaintiff claims, because of the failure to follow the procedures established by § 22a-42a (b), as well as the Clinton inland wetland regulations.

Accordingly, the plaintiff has standing to bring this action pursuant § 22a-16.

## III

After granting Chelsea's motion to dismiss the complaint, the trial court proceeded to grant its motion to strike the complaint for failure of the plaintiff to "state a claim which is legally sufficient."[9] That ruling is flawed for several reasons unrelated to its merits. First, the dismissal of the complaint was a final judgment that effectively terminated proceedings in the trial court. Once the case was dismissed for lack of subject matter jurisdiction, the complaint was no longer before the trial court for the purpose of considering whether it alleged a viable cause of action. Second, the rules of practice provide a plaintiff whose complaint has been stricken an opportunity to amend a pleading deficiency before a final judgment may be rendered. Practice Book (1998 Rev.) § 10-44. This plaintiff, however, was deprived of that opportunity once his complaint was dismissed for lack of jurisdiction. No amendment of the complaint was possible after it had been dismissed.

---

[9] In part II of this opinion, we addressed this claim so far as it relates to subject matter jurisdiction and concluded that it was without merit.

Third, there is no final judgment on the motion to strike as contemplated by Practice Book (1998 Rev.) § 10-44 and, therefore, that prerequisite for appellate review has not been satisfied. Accordingly, we must await further proceedings in the trial court relating to the rendition of a final judgment on the motion to strike before we may consider the plaintiff's appeal therefrom.

The judgment is reversed and the case is remanded with direction to deny the motion to dismiss the complaint and for further proceedings with respect to the motion to strike.

In this opinion the other judges concurred.