[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 1607 RE: MOTIONS TO DISMISS (#104, #107, #114)
 FACTS
The plaintiff, Fort Trumbull Conservancy, LLC, commenced this action by filing a five-count complaint on July 14, 2000. The allegations in the complaint relate to the creation and approval of a municipal development plan (MDP) for the Fort Trumbull area of the city of New London. The plaintiff describes itself in the first count as "a limited liability corporation existing and operating under the laws of the State of Connecticut to carry on any legal business including but not limited to taking efforts to preserve, conserve, maintain and protect the continuity, historic importance, environment and legal status of an area located in New London known as Fort Trumbull." The plaintiff further states that it "is comprised of present and potential members that are residents, homeowners and/or taxpayers who reside in the City of New London, County of New London, State of Connecticut within, adjacent to and/or affected by the MDP and have jurisdiction and standing to commence this action pursuant to Connecticut General Statutes sections 22a-16, 52-29
and 52-471."
The following facts are undisputed. The defendant New London Development Corporation (NLDC) is a non-profit, private economic development organization formed in 1978, with the authority to raise and borrow funds, manage projects, acquire and sell properties and engage in any activity related to the progress and general welfare of the New London community. On or about May 18, 1998, the defendant city of New London, acting through its city council, designated the NLDC as the developing agency or implementing agency for the city. At the same time, the city council resolved that the defendant New London Redevelopment Agency (NLRA) cause the NLDC to prepare a redevelopment plan for the Fort Trumbull area. The city council further resolved that the NLRA, upon receipt of the MDP, take necessary steps to process the plan for consideration of its approval. In addition, the city council authorized the NLDC to apply to the defendant department of economic and community development (DECD) for funding for the project.
In June, 1998, the DECD performed an environmental impact assessment and determined that the MDP could have a significant impact on the environment. In response to the assessment, the NLDC prepared a written environmental impact evaluation for the DECD pursuant to General Statutes § 22a-1b.[1] Upon completing the environmental impact evaluation, the NLDC delivered it to the DECD for comment and review. Pursuant to General Statutes § 22a-1d, the environmental impact evaluation was CT Page 1608 made available to the public for inspection and comment from November 10, 1998 through December 28, 1998. After the conclusion of the 45-day public comment period, the DECD prepared a record of decision consisting of all public notice documentation, comments received from interested parties and the DECD's decision relative to proceeding with the proposed MDP. The record of decision was forwarded to the state office of policy and management, which approved the environmental impact evaluation contingent upon the DECD addressing specific issues related to civil preparedness and flood plain and coastal management policies. The MDP was adopted by the city and the redevelopment agency on or about January 14, 2000. The city, acting through the NLDC, subsequently commenced condemnation and demolition of properties located in the area subject to the MDP.
The plaintiff alleges in the first count that the acts of the defendants violated the constitution of Connecticut, article first, §§ 10 and 11, as well as the fifth and fourteenth amendments of the United States constitution. Specifically, the plaintiff claims that chapters 130, 132 and 588 of the General Statutes, which set forth the procedures for approval of the MDP, are unconstitutional because they do not provide for judicial review of the approval of the MDP. In the second count of the complaint, the plaintiff repeats the allegations of the first count and alleges that the actions of the defendants violated the General Statutes, the New London city charter, and the directives of the New London city council. In the third count of the complaint, the plaintiff repeats the allegations of the first count and further alleges that the actions of the defendants violated the Environmental Policy Act, General Statutes § 22a-1 et seq., and the Environmental Protection Act, General Statutes § 22a-14 et seq. The plaintiff also alleges in the third count that it "has standing pursuant to the . . . Environmental Protection Act (C.G.S. 22a-16)." In the fourth count of the complaint, the plaintiff repeats the allegations of the first count and alleges that the defendants' actions violated the constitution of Connecticut, article first, § 11 and the fourteenth amendment of the United States constitution. In count five of the complaint, the plaintiff repeats the allegations of the first count and further alleges that the demolition of the properties within the development plan will cause the plaintiff irreparable harm, and that the plaintiff has no adequate remedy at law.
In its prayer for relief, the plaintiff seeks a declaratory judgment as to twenty separate issues, temporary and permanent injunctions, "[r]emand to DECD for further proceedings," damages, costs, attorney's fees, and such other relief as the court may deem just and equitable.
On September 28, 2000, the defendant NLDC filed a motion to dismiss the CT Page 1609 action on the grounds that the plaintiff lacks standing and that the plaintiff has failed to exhaust its administrative remedies. With its motion, NLDC also submitted a memorandum of law, an affidavit and copies of various documents. On September 29, 2000, the defendant DECD filed a motion to dismiss for lack of jurisdiction over the subject matter and for improper venue. This motion is also accompanied by a memorandum of law and affidavit. On October 4, 2000, the defendants city of New London and NLRA filed a motion to dismiss, adopting the grounds and arguments in the other defendants' motions and memoranda.
The plaintiff filed two objections to the motions to dismiss, on October 5, 2000 and October 12, 2000 respectively. Also on October 12, 2000, the plaintiff filed a memorandum of law in support of its objections. On October 20, 2000, the NLDC filed a reply to the plaintiff's objections. Oral argument on the motion was heard on November 6, 2000, at which time the court granted the plaintiff's motion to file a rebuttal to the reply of the NLDC, with the condition that the rebuttal be filed by November 14, 2000. As of the time of this memorandum of decision, no rebuttal had been filed by the plaintiff. The plaintiff has not filed any affidavits or other evidence in opposition to the motions to dismiss.
 DISCUSSION
"The motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, and (5) insufficiency of service of process." Practice Book § 10-31(a). "Any defendant, wishing to contest the court's jurisdiction, may do so even after having entered a general appearance, but must do so by filing a motion to dismiss within thirty days of the filing of an appearance." Practice Book § 10-30. "Any claim of lack of jurisdiction over the person or improper venue or insufficiency of process or insufficiency of service of process is waived if not raised by a motion to dismiss filed in the sequence provided in Sections 10-6 and 10-7 and within the time provided by Section 10-30." Practice Book § 10-32; see also Coppola v.Coppola, 243 Conn. 657, 659 n. 4, 707 A.2d 281 (1998). In contrast, "[a] motion to dismiss for lack of subject matter jurisdiction may be made at any time." Stroiney v. Crescent Lake Tax District, 205 Conn. 290, 294,533 A.2d 208 (1987); see also Practice Book § 10-33.
"[A] motion to dismiss pursuant to Practice Book § [10-30] may perform the role of either a motion to erase or a plea in abatement under our former practice. . . . The motion to dismiss like a motion to erase admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. . . . Where, however, . . . the motion CT Page 1610 is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint." (Citations omitted; internal quotation marks omitted.)Barde v. Board of Trustees, 207 Conn. 59, 61-62, 539 A.2d 1000 (1988).
As an initial matter, the plaintiff argues in its memorandum of law that the motion to dismiss should be denied because the defendants have failed to prove that the plaintiff lacks subject matter jurisdiction. This argument misstates the allocation of the burden of proof when the issue of subject matter jurisdiction has been raised. The Supreme Court has stated that "[t]he plaintiff bears the burden of proving subject matter jurisdiction, whenever and however raised." Fink v. Golenbock,238 Conn. 183, 199 n. 13, 680 A.2d 1243 (1996).
 Venue
The court will next address the argument, made by the defendant DECD, that the complaint should be dismissed because the judicial district of New London is an improper venue. In support of its position, the DECD cites the language of General Statutes § 22a-16,[2] which provides that if the state is the defendant in an action brought under the section, the action must be commenced in the judicial district of Hartford.
Even if the court assumes, for the sake of argument, that the venue requirement of § 22a-16 applies when the state is a defendant, as distinguished from the defendant, DECD's argument is untimely. As stated above, a claim of improper venue is waived if not raised within thirty days of the filing of an appearance. Practice Book §§ 10-30 and 10-32. In the present case, DECD filed an appearance on August 21, 2000. Its motion to dismiss was filed on September 29, 2000. DECD has therefore waived its claim of improper venue by not raising it within thirty days of its appearance.
DECD argues, however, that the venue requirement is an essential part of the remedy established by § 22a-16. According to DECD, the requirement is therefore mandatory and the plaintiff's failure to comply with the requirement deprives the court of jurisdiction. The Supreme Court has left open the question of whether a plaintiff's failure to comply with the venue requirement of § 22a-16 deprives the court of subject matter jurisdiction. See Keeney v. Old Saybrook, 237 Conn. 135,142 n. 7, 676 A.2d 795 (1996) (declining to decide issue because of inadequate briefing). Nevertheless, "hilt is a well established rule that, outside the area of administrative appeals, venue is not a jurisdictional but a procedural question; consequently, venue, unlike CT Page 1611 subject matter jurisdiction, can be waived by the parties." State v.Kelley, 206 Conn. 323, 332, 537 A.2d 483 (1988); Haigh v. Haigh,50 Conn. App. 456, 465, 717 A.2d 837 (1998). Because DECD did not raise the issue of improper venue within thirty days of its appearance, it has waived the issue and the motion to dismiss may not be granted on that ground.
 Standing
All of the defendants move to have the action dismissed on the ground that the plaintiff lacks standing. "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue." (Citation omitted; internal quotation marks omitted.) State v. DeCaro, 252 Conn. 229, 253, 745 A.2d 800 (2000). "If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause." (Internal quotation marks omitted.)Ramos v. Vernon, 254 Conn. 799, 808, 761 A.2d 705 (2000).
"Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved." (Internal quotation marks omitted.) Crone v. Gill, 250 Conn. 476,479-80, 736 A.2d 131 (1999). The plaintiff in the present case concedes that it is not classically aggrieved.[3] Instead, the plaintiff argues that it has standing pursuant to General Statutes § 22a-16,[4] both in its own right and as a representative of individual members who it claims have standing under the statute. According to the plaintiff, § 22a-16 confers "automatic standing" on any person or legal entity.
"[T]itle 22a of the General Statues, entitled `Environmental Protection,' confers standing on private persons to bring actions to protect the environment. . . . Any member of the general public can initiate an independent declaratory judgment action under General Statutes § 22a-16 in order to raise issues involving the public trust in air, water, or other natural resources of the state." (Citation omitted.) Bombero v. Planning Zoning Commission, 40 Conn. App. 75, 88,669 A.2d 598 (1996). A complaint, however, "does not sufficiently allege standing by merely reciting the provisions of § 22a-16, but must set forth facts to support an inference that unreasonable pollution, impairment or destruction of a natural resource will probably result from the challenged activities unless remedial measures are taken." Lewis v.Planning Zoning Commission, 49 Conn. App. 684, 692, 717 A.2d 246
CT Page 1612 (1998).
In the present case, the plaintiff has not set forth any facts in its complaint that could support an inference that unreasonable pollution, impairment or destruction of a natural resource has resulted or probably will result from the defendants' activities. At oral argument, counsel for the plaintiff stated that the demolition of buildings located within the area affected by the MDP will have an environmental impact.
Nevertheless, there is no explanation, in the complaint or elsewhere, of how the defendants' actions have impacted or will impact the environment. There is also no mention of what particular natural resources are or will be affected by the MDP. Instead, the third count of the complaint merely recites the language of § 22a-16 by stating that "the Defendants . . . [c]reated and/or will create the reasonable likelihood of unreasonable pollution, impairment or destruction of the public trust in the air, water and other natural resources. . . ." (Complaint, Count 3, ¶ 62(c).) Although the plaintiff correctly states that it need not prove its case at this stage of the proceedings;Manchester Environmental Coalition v. Stockton, 184 Conn. 51, 57,441 A.2d 68 (1981); it still must allege facts from which the court may determine that standing exists. Lewis v. Planning Zoning Commission, supra, 49 Conn. App. 692; see also Practice Book § 10-1. Because the Appellate Court has expressly stated that merely repeating the language of the statute is insufficient to establish standing under § 22a-16, and because the plaintiff does not claim to be classically aggrieved, this court lacks subject matter jurisdiction. Lewis v. Planning ZoningCommission, supra, 49 Conn. App. 692.
 Exhaustion of Administrative Remedies
As an additional ground for the dismissal of this action, the defendants argue that the plaintiff has failed to exhaust its administrative remedies. According to the defendants, the plaintiff could have raised its environmental concerns in a hearing before the DECD pursuant to General Statutes § 22a-1d(a). That subsection provides in relevant part: "The department, institution, or agency preparing an evaluation required by section 22a-1b or finding that proposed action shall have no significant environmental impact, shall hold a public hearing on the evaluation or finding that proposed action shall have no significant environmental impact if twenty-five persons or an association having not less that twenty-five persons requests such a hearing within ten days of the publication of the notice in the Connecticut Law Journal." General Statutes § 22a-1d(a).
"The doctrine of exhaustion of administrative remedies is well CT Page 1613 established in the jurisprudence of administrative law. . . . The doctrine provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." (Internal quotation marks omitted.) Johnson v.Statewide Grievance Committee, 248 Conn. 87, 95, 726 A.2d 11 54 (1999).
"The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions. . . . The doctrine . . . furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in advance of possible judicial review. . . . Most important, a favorable outcome will render review by the court unnecessary [because] as the United States Supreme Court has noted: A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene. . . . Thus, [t]he two part rationale for the exhaustion doctrine is: (1) to effectuate the legislative intent that the issue in question be handled in the first instance by . . . administrative officials in order to provide aggrieved persons with full and adequate administrative relief, and to give the reviewing court the benefit of the . . . board's judgment . . . and (2) to relieve courts of the burden of prematurely deciding questions that may be resolved satisfactorily through the administrative process." (Citations omitted; internal quotation marks omitted.) Id., 95-96.
"Despite the important public policy considerations underlying the exhaustion requirement, we have grudgingly carved several exceptions from the exhaustion doctrine. . . . We have recognized such exceptions, however, only infrequently and only for narrowly defined purposes. . . . We have recognized that a party aggrieved by a decision of an administrative agency may be excused from exhaustion of administrative remedies if: recourse to the administrative remedy would be futile or inadequate; Greenwich v. Liquor Control Commission, 191 Conn. 528,541-42, 469 A.2d 382 (1983); the procedures followed by the administrative agency are constitutionally infirm; La Croix v. Board ofEducation, [199 Conn. 70, 79, 505 A.2d 1233 (1986)]; or injunctive relief from an agency decision is necessary to prevent immediate and irreparable harm. Pet v. Department of Health Services, supra, [207 Conn. 346, 370,542 A.2d 672 (1988)]." (Internal quotation marks omitted; citations omitted.) Johnson v. Statewide Grievance Committee, supra, 248 Conn. 103.
The plaintiff mentions a number of factors that it claims should provide an exception to the requirement of exhaustion in the present case. The plaintiff has not, however, clearly stated which of the exceptions described above should apply. The court will therefore examine CT Page 1614 each of the narrow exceptions to the exhaustion doctrine to determine whether it applies in the present case.
First, the plaintiff is not required to exhaust its administrative remedies if resort to the remedies would be futile or inadequate. Johnsonv. Statewide Grievance Committee, supra, 248 Conn. 103. "Although we do not require a party to pursue an administrative remedy that is futile, we have never held that the mere possibility that an administrative agency may deny a party the specific relief requested is a ground for an exception to the exhaustion requirement." Concerned Citizens of Sterlingv. Sterling, 204 Conn. 551, 559, 529 A.2d 666 (1987). "It is futile to seek a remedy only when such action could not result in a favorable decision and invariably would result in further judicial proceedings." (Internal quotation marks omitted.) Simko v. Ervin, 234 Conn. 498, 507,661 A.2d 1018 (1995).
The plaintiff has failed to demonstrate that a public hearing pursuant to § 22a-1d (a) could not have resulted in a favorable decision and invariably would have resulted in further judicial proceedings. If the plaintiff had requested a public hearing, the plaintiff's environmental concerns would have been before the DECD and the office of policy and management. Both of those organizations would have been required to consider the environmental issues raised by the plaintiff before approving or rejecting the MDP. General Statutes §§ 22a-1b, 22a-1d and22a-1e. Because the MDP might have been abandoned or modified in order to prevent the environmental harm alleged by the plaintiff, a public hearing under § 22a-1d could have resulted in a decision favorable to the plaintiff, and would not necessarily have resulted in further judicial proceedings.
The plaintiff argues, however, that the public hearing provision of § 22a-1d is not mandatory. The court finds this argument to be without merit. General Statutes § 22a-1d(a) provides that "[t]he department, institution, or agency preparing an evaluation . . . shall
hold a public hearing on the evaluation . . . if twenty-five persons or an association having not less that twenty-five persons requests such a hearing within ten days of the publication of the notice in the Connecticut Law journal." (Emphasis added.) "Definitive words, such as `must' or `shall,' ordinarily express legislative mandates of a nondirectory nature. . . . We have noted, however, that the use of the word `shall,' though significant, does not invariably establish a mandatory duty." (Citations omitted; emphasis in original.) AngelseaProductions, Inc. v. Commission on Human Rights Opportunities,236 Conn. 681, 689-90, 674 A.2d 1300 (1996).
"The test we have adopted for determining whether such a statutory CT Page 1615 requirement is mandatory or directory is whether the prescribed mode of action is of the essence of the thing to be accomplished, or in other words, whether it relates to matter material or immaterial — to matters of convenience or of substance. . . . If it is a matter of convenience, the statutory provision is directory; if it is a matter of substance, the statutory provision is mandatory. . . . Stated another way, language is deemed to be mandatory if the mode of action is of the essence of the purpose to be accomplished by the statute . . . but will be considered directory if the failure to comply with the requirement does not compromise the purpose of the statute." (Citations omitted; internal quotation marks omitted.) Id., 690.
The legislative policy behind the Environmental Policy Act, General Statutes §§ 22a-1 through 22a-13, is stated in § 22a-1: "[T]he General Assembly hereby declares that the policy of the state of Connecticut is to conserve, improve and protect its natural resources and environment and to control air, land and water pollution in order to enhance the health, safety and welfare of the people of the state. It shall further be the policy of the state to improve and coordinate the environmental plans, functions, powers and programs of the state, in cooperation with the federal government, regions, local governments, other public and private organizations and concerned individuals, and to manage the basic resources of air, land and water to the end that the state may fulfill its responsibility as trustee of the environment for the present and future generations." General Statues § 22a-1. The legislature has therefore expressly provided that one purpose of the Environmental Policy Act is to involve concerned individuals in the improvement and coordination of environmental plans, functions, powers and programs of the state. Because the failure of an agency to hold a public hearing, upon the petitioning of twenty-five persons, would compromise that purpose, the use of the word "shall" in § 22a-1d(a) relates to a matter of substance, and is therefore mandatory rather than directory.
The plaintiff also argues that exhaustion is not required in this case because the time for petitioning for a public hearing under § 22a-1d(a) has expired. An administrative remedy is not inadequate, however, simply because the plaintiff failed to pursue the remedy while it was available. In Fish Unlimited v. Northeast Utilities Service Co.,254 Conn. 1, 756 A.2d 262 (2000), the plaintiffs sought to enjoin the defendant utility company from restarting a nuclear generating unit that they alleged was causing harm to the fish in Long Island Sound. The Supreme Court held that the plaintiffs had failed to exhaust their administrative remedies including past proceedings for the renewal of the defendant's license. The court concluded that "[t]he plaintiffs cannot now benefit from [a] deliberate decision to wait until the eleventh CT Page 1616 hour, claim futility or inadequacy, and then request that the trial court step in and issue relief that is properly within the authority and expertise of the [administrative agency]." Id., 18. The Supreme Court's comments are apposite to the present case, in which the plaintiff has chosen not to participate in the proceedings available prior to the approval of the MDP, and now asks the court to grant relief that might have been obtained through those procedures. The court finds that the administrative remedy available under § 22a-1d(a) was not inadequate or futile.
The second exception to the exhaustion requirement applies when the procedures followed by the administrative agency are constitutionally infirm. Johnson v. Statewide Grievance Committee, supra, 248 Conn. 103. The plaintiff argues that it should be excused from the exhaustion requirement because there is no right to appeal a decision made after a public hearing pursuant to § 22a-1d(a). This argument parallels the plaintiff's constitutional claims, set forth in counts one and four of the complaint, that the procedures followed by the various agencies in approving the MDP violate the federal and state constitutions because the statutes provide no right to judicial review of the approval of an MDP.
Our Supreme Court "repeatedly [has] held . . . that [d]irect adjudication even of constitutional claims is not warranted when the relief sought by a litigant might conceivably have been obtained through an alternative [statutory] procedure . . . which [the litigant] has chosen to ignore." (Internal quotation marks omitted.) Fish Unlimited v.Northeast Utilities Service Co., supra, 254 Conn. 18. "This court has a basic judicial duty to avoid deciding a constitutional issue if a nonconstitutional ground exists that will dispose of the case. . . . The best teaching of this Court's experience admonishes us not to entertain constitutional questions in advance of the strictest necessity." (Internal quotation marks omitted.) Kish v. Cohn, 59 Conn. App. 236,242, 756 A.2d 313 (2000). The court will therefore not address the plaintiff's constitutional claims.
The third exception to the exhaustion requirement is applicable when injunctive relief from an agency decision is necessary to prevent immediate and irreparable harm. Johnson v. Statewide GrievanceCommittee, supra, 248 Conn. 103. The plaintiff has not argued the issue of irreparable harm, either in its memorandum of law or in oral argument on the motion to dismiss. The court will therefore not address this exception to the exhaustion doctrine.
Finally, the court notes the relevance of a recent Appellate Court case, Kish v. Cohn, supra, 59 Conn. App. 236. In that case, the plaintiffs sought to enjoin the defendant from lowering or removing a dam CT Page 1617 that controlled the primary source of water for a pond in which the plaintiffs had recreational rights. The Appellate Court affirmed the trial court's dismissal of the action on the ground that the plaintiffs failed to exhaust their administrative remedies. Id., 238-39, 243. The administrative remedy in that case was provided by General Statutes § 22a-403(a), which provides in relevant part: "Before any person constructs, alters, rebuilds, substantially repairs, adds to, replaces or removes any such [dam], such person shall apply to the commissioner for a permit to undertake such work. . . . The commissioner . . . shall hold a hearing if, within thirty days after such notice has been published, he receives a petition requesting such a hearing signed by at least twenty-five persons." The Appellate Court held that the statute provided an adequate administrative remedy that the plaintiffs were required to exhaust before judicial relief could be granted. Because of the similarity between the public hearing provisions contained in §§22a-1d(a) and 22a-403 (a), the holding of the Kish court lends support to the conclusion that the plaintiff in the present case has failed to exhaust an adequate administrative remedy.
 CONCLUSION
The plaintiff, in its complaint, has failed to set forth facts sufficient to support an inference of environmental harm, and therefore lacks statutory standing under General Statutes § 22a-16. For that reason, and because the plaintiff has conceded that it is not classically aggrieved, the plaintiff lacks standing. Furthermore, the plaintiff has failed to exhaust its administrative remedies. For these reasons, the court lacks subject matter jurisdiction.
The motions to dismiss are granted.
D. Michael Hurley, Judge Trial Referee