WALTER J. LEWIS, JR. *v.* PLANNING AND
ZONING COMMISSION OF THE TOWN
OF CLINTON ET AL.
(SC 17006)

Sullivan, C. J., and Norcott, Palmer, Zarella and Shortall, Js.

Argued December 1, 2004—officially released September 6, 2005

*Norman J. Voog*, for the appellant (plaintiff).

*John S. Bennet*, for the appellees (named defendant et al.).

*Dean M. Cordiano*, with whom were *Joseph L. Hammer*, and, on the brief, *Elin Swanson Katz*, for the appellee (defendant Chelsea G.C.A. Realty Partnership, L.P.).

*Opinion*

PALMER, J. The dispositive issue in this appeal is whether the plaintiff, Walter J. Lewis, Jr., has standing under General Statutes § 22a-16[1] to challenge: (1) the decision of the defendant inland wetlands and conserva-

---

[1] General Statutes § 22a-16 provides: "The Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may maintain an action in the superior court for the judicial district wherein the defendant is located, resides or conducts business, except that where the state is the defendant, such action shall be brought in the judicial district of Hartford, for declaratory and equitable relief against the state, any political subdivision thereof, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity, acting alone, or in combination with others, for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction provided no such action shall be maintained against the state for pollution of real property acquired by the state under subsection (e) of section 22a-133m, where the spill or discharge which caused the pollution occurred prior to the acquisition of the property by the state."

tion commission of the town of Clinton (commission) approving the application of the defendant Chelsea G.C.A. Realty Partnership, L.P.[2] (Chelsea) for a permit to conduct certain regulated activities in connection with the development of the Clinton Crossing Premium Outlet Center (Clinton Crossing);[3] and (2) the propriety of Chelsea's construction of a storm drainage system on the Clinton Crossing property before obtaining a water discharge permit from the state department of environmental protection. The trial court struck the plaintiff's claim alleging that Chelsea unlawfully had constructed a storm drainage system and thereafter granted the defendants' motions for summary judgment on the plaintiff's remaining claim challenging the validity of the permit that the commission had issued to Chelsea. The trial court thereupon rendered judgment for the defendants, from which the plaintiff appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. We do not address the merits of the plaintiff's claims on appeal, however, because we conclude that the plaintiff lacks standing to bring those claims under § 22a-16 and, therefore, that the trial court lacked subject matter jurisdiction over the plaintiff's action. Accordingly, we reverse the judgment of the trial court and remand the case to that court with direction to render judgment dismissing the action.

[2] We note that Chelsea G.C.A. Realty Partnership, L.P., was doing business as Connecticut's Factory Stores, Inc., when it filed its application for the permit. For ease of reference, we refer to Chelsea as the applicant and recipient of that permit.

In addition to naming the commission and Chelsea G.C.A. Realty Partnership, L.P., as defendants, the plaintiff also named the town of Clinton, the planning and zoning commission of the town of Clinton, and the commissioner of environmental protection as defendants.

[3] In addition to challenging the validity of the permit, the plaintiff also sought to challenge the validity of the site plan approval issued by the named defendant, the planning and zoning commission of the town of Clinton.

The following facts and procedural history are relevant to our disposition of the plaintiff's appeal. In 1994, the commission issued a permit to Chelsea[4] authorizing various activities in connection with the construction of Clinton Crossing, a mall located on a forty-seven acre parcel of property in the town of Clinton. Thereafter, the plaintiff brought this action pursuant to § 22a-16, raising two essential claims. First, the plaintiff alleged that the permit was invalid because the commission had granted it in reliance on a wetlands map submitted by Chelsea that differed materially from the town wetlands map previously approved by the commission in 1986 pursuant to General Statutes § 22a-42a (b).[5] In support of this

---

[4] See footnote 2 of this opinion.

[5] General Statutes § 22a-42a (b) provides: "No regulations of an inland wetlands agency including boundaries of inland wetland and watercourse areas shall become effective or be established until after a public hearing in relation thereto is held by the inland wetlands agency. Any such hearing shall be held in accordance with the provisions of section 8-7d. A copy of such proposed regulation or boundary shall be filed in the office of the town, city or borough clerk as the case may be, in such municipality, for public inspection at least ten days before such hearing, and may be published in full in such paper. A copy of the notice and the proposed regulations or amendments thereto, except determinations of boundaries, shall be provided to the commissioner at least thirty-five days before such hearing. Such regulations and inland wetland and watercourse boundaries may be from time to time amended, changed or repealed, by majority vote of the inland wetlands agency, after a public hearing in relation thereto is held by the inland wetlands agency, in accordance with the provisions of section 8-7d. Regulations or boundaries or changes therein shall become effective at such time as is fixed by the inland wetlands agency, provided a copy of such regulation, boundary or change shall be filed in the office of the town, city or borough clerk, as the case may be. Whenever an inland wetlands agency makes a change in regulations or boundaries it shall state upon its records the reason why the change was made and shall provide a copy of such regulation, boundary or change to the Commissioner of Environmental Protection no later than ten days after its adoption provided failure to submit such regulation, boundary or change shall not impair the validity of such regulation, boundary or change. All petitions submitted in writing and in a form prescribed by the inland wetlands agency, requesting a change in the regulations or the boundaries of an inland wetland and watercourse area shall be considered at a public hearing held in accordance with the provisions of section 8-7d. The failure of the inland wetlands agency to act within any

claim, the plaintiff alleged that Chelsea had violated § 22a-42a (b) by failing to submit the town wetlands map with its permit application and that the commission had violated that statutory provision by approving Chelsea's application without first amending the town map to reflect the wetland boundaries depicted in Chelsea's map. The plaintiff further maintained that, as a result of the commission's improper reliance on Chelsea's map, the commission authorized Chelsea to conduct its activities in a larger area of wetlands than it would have authorized if it had relied on the approved town wetlands map.[6] Second, the plaintiff claimed that Chelsea unlawfully had constructed a storm drainage system on the Clinton Crossing property without first obtaining a water discharge permit from the state department of environmental protection. The plaintiff sought, inter alia, an injunction barring Chelsea from engaging in the challenged activities.

Thereafter, Chelsea filed a motion to dismiss the action and to strike the complaint, claiming lack of subject matter jurisdiction and failure to state a legally sufficient claim. The trial court, *Stengel, J.*, granted Chelsea's motion,[7] and the plaintiff appealed. On appeal,

time period specified in this subsection, or any extension thereof, shall not be deemed to constitute approval of the petition."

[6] We note that the complaint is not a model of clarity with respect to this allegation. We construe the complaint liberally in favor of the plaintiff, however, and conclude that the complaint does contain such an allegation.

[7] The trial court, *Stengel, J.*, concluded that the plaintiff improperly was attempting to raise issues that he should have raised at the hearings on Chelsea's applications for site plan approval; see footnote 3 of this opinion; and for the wetlands permit, or in an appeal from the decisions made in connection with those hearings, and, therefore, that the plaintiff had failed to exhaust all available administrative remedies. *Lewis* v. *Planning & Zoning Commission*, 49 Conn. App. 684, 688, 717 A.2d 246 (1998). The trial court also concluded that the plaintiff was improperly attempting to attack collaterally the decision of the commission with respect to Chelsea's application for the wetlands permit and the decision of the town's planning and zoning commission with respect to the site plan approval. Id.

the Appellate Court reversed and remanded the case for further proceedings, concluding, inter alia, that the trial court improperly had concluded that it lacked subject matter jurisdiction. *Lewis* v. *Planning & Zoning Commission*, 49 Conn. App. 684, 691, 694, 717 A.2d 246 (1998). The Appellate Court reversed only with respect to the plaintiff's claim regarding the propriety of the wetlands permit in light of its conclusion that the plaintiff had abandoned its claim regarding the storm drainage system by failing to brief it adequately. See id., 688 n.3.

Following remand, the plaintiff filed a revised complaint that contained the same essential claims as those contained in his original complaint. The trial court, *McWeeny, J.*,[8] subsequently struck the plaintiff's claim regarding the storm drainage system on the ground that the plaintiff was foreclosed from renewing that claim because he had failed to appeal from the earlier adverse ruling on that claim. See id. (plaintiff had abandoned claim regarding storm drainage system in previous appeal).

The plaintiff thereafter filed a motion for summary judgment, claiming that the wetlands permit was invalid because the commission had violated § 22a-42a (b) by relying on Chelsea's map rather than the town wetlands map. The defendants also filed motions for summary judgment, claiming that § 22a-42a (b) did not bar the commission from using the wetlands map that Chelsea had submitted with its application instead of the town wetlands map. The defendants further maintained that the plaintiff lacked standing under § 22a-16 to bring his claim because, inter alia, that statutory provision affords standing to plaintiffs who challenge activities causing or likely to cause unreasonable pollution of

---

[8] Hereinafter, all references to the trial court are to the court, *McWeeny, J.*, unless otherwise indicated.

the environment as opposed to plaintiffs who merely challenge the validity of the permitting process. The trial court granted the defendants' motions for summary judgment, concluding that neither Chelsea's failure to seek an amendment to the town wetlands map nor the commission's reliance on Chelsea's map violated § 22a-42a (b).[9] The trial court also concluded that the defendants were entitled to judgment in their favor because "Chelsea [had] complied with the specific statutory and regulatory provisions regarding permitted activities

---

[9] In granting the defendants' summary judgment motions, the trial court explained that, although § 22a-42a (b) delineates procedures for amending the wetland boundaries of a town's inland wetlands map, § 22a-42a (b) does not address the issue of when such an amendment is required. The trial court concluded that, in the present case, an amendment to the town wetlands map was unnecessary because, under the wetlands regulations of the town of Clinton, the town wetlands map simply was intended to indicate the general location of the wetland boundaries and, therefore, the commission was free to determine reasonably the precise location of those boundaries, for purposes of Chelsea's application, as it deemed fit.

Moreover, the trial court found that that the commission was aware of the discrepancies between Chelsea's map and the town wetlands map but reasonably had concluded that Chelsea's map more accurately depicted the wetland boundaries relevant to Chelsea's application. In particular, the trial court found: "Specific submissions to the . . . commission . . . [also] raised the issue of the discrepancy between Chelsea's wetlands [map] and the [town wetlands] map. These submissions were considered by the . . . commission during the hearing process. The wetlands enforcement officer stated at the . . . public hearing [on Chelsea's permit application] that she and the town engineer were satisfied with the wetland boundaries set forth in [Chelsea's] application.

\* \* \*

"An independent investigation of the [wetland] boundary of the property and the discrepancy alleged by the plaintiff was conducted by Steve Tessitore, a soil scientist, employed at the time by the state . . . department of environmental protection. . . . Tessitore concluded that the Chelsea [map] was proper. The United States Army Corp[s] of Engineers and the [United States] Environmental Protection Agency also sent representatives to the property to examine the [wetland] boundaries, and those agencies also concluded that the Chelsea [wetlands map] was proper.

"The . . . commission discussed the boundaries at length during its deliberations, including the map submitted, and concluded that the application accurately set forth the wetland boundaries."

impacting wetlands . . . [and] [s]uch compliance cannot constitute an 'unreasonable' impairment for purposes of . . . § 22a-16."

On appeal, the plaintiff challenges both the trial court's ruling striking his claim that Chelsea unlawfully had constructed a storm drainage system without first obtaining the necessary permit and the trial court's ruling granting the defendants' motions for summary judgment. We do not reach the merits of the plaintiff's claims because we conclude that he lacks standing under § 22a-16 to bring this action.

We commence our analysis by setting forth the legal principles that govern our review. "If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . .

"Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The objection of want of jurisdiction may be made at any time . . . [a]nd the court or tribunal may act on its own motion, and should do so when the lack of jurisdiction is called to its attention. . . . The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage [of] the proceedings. . . .

"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits

brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy. . . . The requirement of directness between the injuries claimed by the plaintiff and the conduct of the defendant also is expressed, in our standing jurisprudence, by the focus on whether the plaintiff is the proper party to assert the claim at issue. . . .

"Two broad yet distinct categories of aggrievement exist, classical and statutory. . . . Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the decision, as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the agency's decision has specially and injuriously affected that specific personal or legal interest. . . . Aggrievement does not demand certainty, only the possibility of an adverse effect on a legally protected interest. . . .

"Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Citations omitted; internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 485–87, 815 A.2d 1188 (2003).

"Traditionally, citizens seeking to protect the environment were required to show specific, personal

aggrievement to attain standing to bring a legal action. . . . The Connecticut Environmental Protection Act; General Statutes § 22a-1 et seq.; however, waives the aggrievement requirement in two circumstances. First, any private party, including a municipality, without first having to establish aggrievement, may seek injunctive relief in court for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction . . . . General Statutes § 22a-16. Second, any person or other entity, without first having to establish aggrievement, may intervene in any administrative proceeding challenging conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state. General Statutes § 22a-19 (a)." (Citation omitted; internal quotation marks omitted.) *Fish Unlimited* v. *Northeast Utilities Service Co.*, 254 Conn. 21, 31, 755 A.2d 860 (2000), overruled in part on other grounds by *Waterbury* v. *Washington*, 260 Conn. 506, 800 A.2d 1102 (2002).

The plaintiff contends that § 22a-16 affords him standing to challenge the validity of the procedures pursuant to which Chelsea obtained its wetlands permit and constructed the storm drainage system. The plaintiff's claim, however, is foreclosed by this court's decision in *Connecticut Coalition Against Millstone* v. *Rocque*, 267 Conn. 116, 836 A.2d 414 (2003) (*Connecticut Coalition*).[10] In that case, the plaintiffs, environmental advocates, sought to enjoin operations at the Millstone Nuclear Power Generating Station, claiming that the facility had been operating for several years without a

[10] We note that we issued our opinion in *Connecticut Coalition* after the trial court struck the plaintiff's claim regarding the storm drainage system and granted the defendants' motions for summary judgment in the present case.

valid water discharge permit, in violation of General Statutes § 22a-430, and without a valid emergency authorization permit, in violation of General Statutes § 22a-6k. Id., 119–20. In affirming the judgment of the trial court dismissing the action, we conducted an extensive review of our standing jurisprudence under § 22a-16 and concluded that, "[when] the alleged conduct involves a permitting claim . . . there is no standing pursuant to § 22a-16 to bring the claim directly in the Superior Court, and the claim must be resolved under the provisions of the appropriate licensing statutes." Id., 148. As we further explained, "to establish a prima facie case under § 22a-16, the plaintiff must establish that the conduct of the defendant, acting alone, or in combination with others, has, or is reasonably likely . . . to pollute [unreasonably] . . . the public trust in the . . . water of the state. . . . Allegations of a flawed licensing proceeding do not meet that test. . . . [A] claim under [the Connecticut Environmental Protection Act (CEPA)] that conduct causes unreasonable pollution is not the same as a claim that conduct fails to comply with the requirements of other environmental statutes. To illustrate the point, the fact that conduct may be permitted under the relevant environmental statute does not preclude a claim that the activity causes unreasonable pollution under CEPA, as when the alleged pollution exceeds the amount approved in the permit. Conversely, a claim that conduct is not properly authorized does not necessarily establish that the conduct causes unreasonable pollution under CEPA." (Internal quotation marks omitted.) Id., 140–41.

As we have indicated, the gravamen of the plaintiff's complaint is twofold: first, the wetlands permit that the commission had issued to Chelsea was invalid because the process pursuant to which that permit was issued was flawed, and, second, Chelsea unlawfully con-

structed a storm drainage system before obtaining the necessary permit. Neither claim affords the plaintiff standing to bring an action under § 22a-16 because each claim is based on the allegation that Chelsea is conducting its activities without a valid permit.

With respect to the plaintiff's first claim, his allegation of unreasonable pollution derives from and is wholly dependent on his contention that Chelsea's activities are unlawful because the permitting process was flawed. As we made clear in *Connecticut Coalition*, however, § 22a-16 does not confer standing on a plaintiff who seeks to challenge the validity of the permitting process. See id., 145–46, 148. Because the plaintiff's claim of unreasonable pollution is predicated entirely on his assertion of a defect in the permitting process, he lacks standing to bring that claim under § 22a-16.

The same is true with respect to the plaintiff's claim that Chelsea constructed a storm drainage system before obtaining the necessary permit. The crux of the plaintiff's claim is that Chelsea is unreasonably polluting the wetlands because it failed to obtain the necessary permit before constructing the storm drainage system, not that Chelsea's construction of the system has or likely will cause unreasonable pollution. Because the plaintiff makes no allegation that is sufficiently independent of his permitting claim, he has no standing under § 22a-16 to challenge the propriety of Chelsea's construction of the storm drainage system. Because the plaintiff has no standing under § 22a-16 to assert either of his claims, the action must be dismissed for lack of subject matter jurisdiction.

The form of the judgment is improper, the judgment is reversed and the case is remanded with direction to render judgment dismissing the action for lack of subject matter jurisdiction.

In this opinion the other justices concurred.