# FORT TRUMBULL CONSERVANCY, LLC *v.* CITY OF NEW LONDON ET AL.

## (SC 17753)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued February 14—officially released July 3, 2007

*Scott W. Sawyer*, with whom was *Nicholas Grimaldi, Jr.*, for the appellant (plaintiff).

*David P. Condon*, with whom were *Jeffrey T. Londregan* and, on the brief, *Edward B. O'Connell* and *Thomas J. Londregan*, for the appellees (defendant New London Development Corporation et al.).

*William J. Prensky*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellees (defendant department of economic and community development et al.).

*Opinion*

VERTEFEUILLE, J. The primary issue in this appeal[1] is whether the trial court properly determined that the plaintiff, Fort Trumbull Conservancy, LLC, lacks standing under the Connecticut Environmental Protection Act (act), General Statutes § 22a-14 et seq., to bring this action against the defendants, the city of New London (city), the New London planning and zoning commission (commission), the New London Development Cor-

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

poration (corporation), the state department of economic and community development (department), and the state office of policy and management (office). The trial court granted the defendants' motions to dismiss the plaintiff's complaint seeking, inter alia, to enjoin the implementation of a municipal development plan in the Fort Trumbull area of New London on the ground that the plaintiff had failed to establish standing to seek relief under General Statutes § 22a-16,[2] and rendered judgment dismissing the action. We reverse the judgment of the trial court.

This action is the latest in a series of actions brought by the plaintiff seeking to enjoin the implementation of the municipal development plan and related actions. See *Fort Trumbull Conservancy, LLC* v. *Planning & Zoning Commission*, 266 Conn. 338, 832 A.2d 611 (2003); *Fort Trumbull Conservancy, LLC* v. *New London*, 265 Conn. 423, 829 A.2d 801 (2003); *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 815 A.2d 1188 (2003). The factual background of these cases is set forth in *Fort Trumbull Conservancy, LLC* v. *New*

[2] General Statutes § 22a-16 provides: "The Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may maintain an action in the superior court for the judicial district wherein the defendant is located, resides or conducts business, except that where the state is the defendant, such action shall be brought in the judicial district of Hartford, for declaratory and equitable relief against the state, any political subdivision thereof, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity, acting alone, or in combination with others, for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction provided no such action shall be maintained against the state for pollution of real property acquired by the state under subsection (e) of section 22a-133m, where the spill or discharge which caused the pollution occurred prior to the acquisition of the property by the state."

*London*, supra, 423, as follows. "In May, 1998, the New London city council designated the corporation, a private, nonprofit organization, as the development agency for the city. Thereafter, the corporation applied to the department for financial support for a development plan for the Fort Trumbull area of New London. Among other things, the development plan called for the condemnation of property and demolition of buildings located in that area. After performing an environmental impact assessment, the department determined that the development plan could have a significant impact on the environment. The corporation therefore prepared an environmental impact evaluation in accordance with General Statutes (Rev. to 1997) § 22a-1b (b).[3] The department made the evaluation available for public

---

[3] General Statutes (Rev. to 1997) § 22a-1b (b) provides: "Each state department, institution or agency responsible for the primary recommendation or initiation of actions which may significantly affect the environment shall in the case of each such proposed action make a detailed written evaluation of its environmental impact before deciding whether to undertake or approve such action. All such environmental impact evaluations shall be detailed statements setting forth the following: (1) A description of the proposed action; (2) the environmental consequences of the proposed action, including direct and indirect effects which might result during and subsequent to the proposed action; (3) any adverse environmental effects which cannot be avoided and irreversible and irretrievable commitments of resources should the proposal be implemented; (4) alternatives to the proposed action, including the alternative of not proceeding with the proposed action; (5) mitigation measures proposed to minimize environmental impacts; (6) an analysis of the short term and long term economic, social and environmental costs and benefits of the proposed action; (7) the effect of the proposed action on the use and conservation of energy resources; and (8) a description of the effects of the proposed action on sacred sites or archaeological sites of state or national importance. In the case of an action which affects existing housing, the evaluation shall also contain a detailed statement analyzing (A) housing consequences of the proposed action, including direct and indirect effects which might result during and subsequent to the proposed action by income group as defined in section 8-37aa and by race and (B) the consistency of the housing consequences with the state housing advisory plan adopted under section 8-37t. As used in this section, 'sacred sites' and 'archaeological sites' shall have the same meaning as in section 10-381."

inspection and comment[4] in accordance with General Statutes (Rev. to 1997) § 22a-1d.[5]

"Following the public comment period, the department rendered a decision recommending that the proposed development plan be implemented. Thereafter, the [office] conditionally approved the environmental impact evaluation.[6] In January, 2000, the city and the [New London] redevelopment agency adopted the development plan. The corporation, acting on behalf of the city, subsequently condemned and demolished certain properties located in the Fort Trumbull area.

"The plaintiff, a limited liability corporation formed, among other reasons, 'to preserve, conserve, maintain and protect the continuity, historic importance, environment and legal status of [the Fort Trumbull] area,' initiated [an] action in July, 2000, alleging numerous violations of federal, state and local law in connection with the creation, approval and implementation of the development plan. The plaintiff sought various legal and equitable remedies, including declaratory relief and

[4] "The public comment period commenced on November 10, 1998, and ended on December 28, 1998." *Fort Trumbull Conservancy, LLC* v. *New London,* supra, 265 Conn. 427 n.4.

[5] General Statutes (Rev. to 1997) § 22a-1d (a) provides in relevant part: "Evaluations required by sections 22a-1a to 22a-1f, inclusive, and a summary thereof, including any negative findings, and environmental statements otherwise required and prepared subsequent to July 8, 1975, shall be submitted for comment and review to the Council on Environmental Quality, the Department of Environmental Protection, the Connecticut Historical Commission, the Department of Economic and Community Development in the case of a proposed action that affects existing housing, and other appropriate agencies, and to the town clerk of each municipality affected thereby, and shall be made available to the public for inspection and comment at the same time. . . ."

[6] "The evaluation was approved subject to the condition that the department address certain issues relating to civil preparedness and flood plain and coastal management policies." *Fort Trumbull Conservancy, LLC* v. *New London,* supra, 265 Conn. 427 n.6.

an injunction prohibiting the defendants[7] from implementing the plan.

"The defendants filed motions to dismiss, claiming that the plaintiff lacked standing to challenge their actions regarding the development plan. In particular, the defendants claimed that the plaintiff had failed to establish: (1) statutory aggrievement under § 22a-16 inasmuch as the complaint merely repeated the language of that statutory provision and did not set forth any facts indicating how the defendants' activities were likely to result in 'unreasonable pollution, impairment or destruction' of the state's natural resources; General Statutes § 22a-16; and (2) classical aggrievement, inasmuch as the complaint contained insufficient allegations of any direct and specific injury. The trial court agreed with the defendants' claims and, therefore, granted the motions to dismiss and rendered judgment thereon dismissing the plaintiff's complaint." *Fort Trumbull Conservancy, LLC* v. *New London*, supra, 265 Conn. 426–29.

On appeal to this court, the plaintiff claimed that its allegations, that the defendants had failed to follow certain procedural requirements in adopting the development plan and that the plan called for demolition without consideration of " 'feasible and prudent alternatives,' " were specific enough to support its claim of environmental harm under § 22a-16. Id., 431. We concluded that it was "not evident how the defendants' failure to follow certain procedural requirements in adopting the development plan or to consider alternatives to the demolition of buildings in the Fort Trumbull area [was] likely to cause such harm." Id., 433. Accordingly, we concluded that the trial court properly had

---

[7] The defendants named in *Fort Trumbull Conservancy, LLC* v. *New London,* supra, 265 Conn. 425, were the city, the New London redevelopment agency, the corporation and the department.

determined that the plaintiff had failed to establish statutory standing under § 22a-16. Id., 433–34.

In May, 2005, the plaintiff initiated the present action in the judicial district of New London, again seeking, inter alia, a permanent injunction prohibiting the defendants from implementing the development plan. In a two count complaint, the plaintiff again alleged that the office's approval of the environmental impact evaluation and the city's adoption of the development plan were invalid as the result of certain procedural defects. In count one, alleging "unreasonable likelihood of harm," the plaintiff made numerous specific allegations concerning the negative impact that the implementation of the development plan would have on the water, land and air resources in the Fort Trumbull area.[8] In count

[8] Specifically, the plaintiff alleged that the implementation of the development plan was "reasonably likely to cause unreasonable harm to the environment in the following, but not limited . . . ways:

"(a) Heavy [m]etals are now and in the future being deposited into the Thames River and [adjacent] [w]ater [b]odies;

"(b) [Polycyclic aromatic hydrocarbons] are now and in the future being deposited into the Thames River and [adjacent] [w]ater [b]odies;

"(c) Contamination and further contamination of the Thames River and [adjacent] [w]ater [b]odies;

"(d) Ecological/Biological/Environmental degradation of the Thames River and [adjacent] [w]ater [b]odies;

"(e) Negative impacts to the Ecology/Biology/Environment of the Thames River and [adjacent] [w]ater [b]odies;

"(f) Negative impacts to the life systems of the Thames River and [adjacent] [w]ater [b]odies;

"(g) Further negative impacts to the ecology of the Thames River and [adjacent] [w]ater [b]odies, irreparably harming and degrading the Thames River and [adjacent] [w]ater [b]odies;

"(h) Further degradation of the already degraded Thames River and [adjacent] [w]ater [b]odies;

"(i) Deposition into the Thames River and [adjacent] [w]ater [b]odies [of] certain [polycyclic aromatic hydrocarbons] and/or [h]eavy [m]etals;

"(j) An increase in the individual and cumulative pollutant masses deposited into the Thames River and [adjacent] [w]ater [b]odies without simultaneously increasing the treatment for such pollutants, thereby causing an increase in unreasonable harm to the Thames River and [adjacent] [w]ater [b]odies;

"(k) The [d]efendants' [municipal development plan] fails to protect and foster biological diversity and habitat sustainability in the [p]roperty and/or Thames River and [adjacent] [w]ater [b]odies;

two, alleging " 'per se' environmental harm and violation of [the act]," the plaintiff alleged that the defendants had violated a variety of state statutes and regulations and repeated its allegations of environmental harm.

Thereafter, the defendants filed motions to dismiss the complaint on the grounds that: (1) the plaintiff

"(*l*) Contaminate habitats for marine organisms such as benthic invertebrates, fish, and shore birds;

"(m) Destroy green space for recreational activities, and destroy the recreational benefits of the Thames River and [adjacent] [w]ater [b]odies;

"(n) Have a negative impact on the moderation of temperature;

"(o) Increase the amount of [storm water] runoff from streets and other impermeable surfaces into the Thames River and [adjacent] [w]ater [b]odies;

"(p) Increase the amount of non-point source contamination and/or pollution to the Thames River and [adjacent] [w]ater [b]odies;

"(q) Contaminants will be the source of significant negative impacts on the environment generally, the surface water, groundwater and soil on the [p]roperty and/or the Thames River and [adjacent] [w]ater [b]odies;

"(r) Contaminants will enter the soil, groundwater and surface water adjacent to the Thames River and [adjacent] [w]ater [b]odies and will be transported via [storm water] from the [p]roperty to other sensitive receptors away from the [p]roperty;

"(s) The [storm water] runoff into the Thames River and [adjacent] [w]ater [b]odies is not properly and/or adequately treated to prevent and/or mitigate the [h]eavy [m]etals and/or [polycyclic aromatic hydrocarbons] being deposited into the Thames River and [adjacent] [w]ater [b]odies;

"(t) The site [runoff], including [storm water runoff], from [v]ehicular [t]raffic on the [p]roperty will result in the deposition of [h]eavy metals, mercury, zinc, [polycyclic aromatic hydrocarbons], copper, amongst other things, into the Thames River and [adjacent] [w]ater [b]odies in amounts that will cause unreasonable harm and pollution to the Thames River and [adjacent] [w]ater [b]odies;

"(u) Once the contamination enters the Thames River and [adjacent] [w]ater [b]odies it will have significant negative impacts on habitat quality and further destabilize its ecological function and value;

"(v) Once the pollutants enter the Thames River and [adjacent] [w]ater [b]odies, the negative impacts to the Thames River and [adjacent] [w]ater [b]odies will be difficult or impossible to remove, mitigate or counteract;

"(w) Due to the difficulty or impossibility in removing, mitigating or counteracting the negative impacts to the Thames River and [adjacent] [w]ater [b]odies caused by the pollutants and contaminants, described herein, these negative impacts will be irreversible and irreparable; and/or

"(x) Engine exhaust gases from construction vehicles, patrons' vehicles, delivery trucks, employees and buses using the [p]roperty will emit pollutants into the air above and around the [p]roperty."

lacked standing; (2) the case was moot because the procedure leading to the approval of the environmental impact evaluation had terminated in 1999, 80 percent of the pollution mitigation recommendations contained in the evaluation already had been implemented and 98 percent of the funding contributed by the state already had been expended; and (3) the action had been brought in an improper venue under § 22a-16.[9] See General Statutes § 22a-16 (where state is defendant in action brought pursuant to § 22a-16, action shall be brought in judicial district of Hartford). The plaintiff objected to the motions to dismiss and, in support of its objection, submitted an affidavit by its expert, Robert S. DeSanto, a certified environmental professional, in which he stated that, based on his personal knowledge, there was a factual foundation for the allegations of unreasonable harm to the environment contained in the plaintiff's complaint.

The trial court concluded that "[t]he plaintiff [had] not set forth facts to support an inference that unreasonable pollution of a natural resource will result from the defendants' activities." According to the court, although the plaintiff had alleged that various pollutants were being deposited in the Thames River and adjacent water bodies, it had "[failed] to allege with any degree of particularity or precision how or where the contaminants are being deposited." Rather, the court concluded, "[t]he plaintiff's allegations of pollution are speculative and hypothetical. The plaintiff has presented nothing more [than] fuzzy effusions and has failed to allege a colorable claim of conduct resulting in harm to one or more of the natural resources of the state . . . ." Accordingly, the court concluded that the plaintiff did not have statutory standing under § 22a-

---

[9] The defendants initially claimed that the action also was barred by the prior pending action doctrine. They subsequently withdrew that claim at the hearing on the motions to dismiss.

16. Moreover, because the plaintiff had failed to allege any direct harm to its members, it had not established associational standing.[10] The court therefore granted the defendants' motions to dismiss without reaching the defendants' other claims.

This appeal followed. The plaintiff claims on appeal that the trial court improperly dismissed its complaint on the ground that it had failed to make a colorable claim of unreasonable pollution under § 22a-16. The defendants dispute this claim and, as alternate grounds for affirmance, reassert their claims that the action should be dismissed because: (1) 80 percent of the recommendations in the environmental impact evaluation have been implemented, 98 percent of the state funds have been expended, and the case is therefore moot; and (2) the action was brought in an improper venue. We conclude that the plaintiff has statutory standing and that the claim is not moot. We further conclude that, although the action was brought in an

---

[10] It is not entirely clear from the trial court's memorandum of decision why the court addressed the issue of associational standing. If the trial court had concluded that the plaintiff had made a colorable claim of unreasonable harm to the environment, that conclusion would have been sufficient to establish the plaintiff's statutory standing regardless of whether its individual members had standing. As we discuss more fully in the body of this opinion, an organization is not required to satisfy the requirements of associational standing to bring an action under § 22a-16. See General Statutes § 22a-16 (any "organization or other legal entity may maintain an action . . . for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction"); see also *Fort Trumbull Conservancy, LLC* v. *Alves*, supra, 262 Conn. 495–96 (court has recognized no restriction on class of persons with standing to seek relief under § 22a-16); cf. *Fort Trumbull Conservancy, LLC* v. *New London*, supra, 265 Conn. 434–36 (organization must show specific and direct injury to members to establish that association has been classically aggrieved). To the extent that the trial court merely was pointing out that the plaintiff did not have associational standing because its individual members had not satisfied the requirements of *classical* aggrievement, we need not reach that question because we conclude that the plaintiff has statutory standing.

improper venue, it should not be dismissed on that ground, but should be transferred to the judicial district of Hartford.

I

We first address the plaintiff's claim that the trial court improperly determined that it lacked standing to seek relief under § 22a-16. In support of this claim, it points to the specific allegations of unreasonable harm to the environment set forth in its complaint and in DeSanto's affidavit. We agree with the plaintiff.

"As a preliminary matter, we address the appropriate standard of review. If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . .

"Subject matter jurisdiction [implicates] the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The objection of want of jurisdiction may be made at any time . . . [a]nd the court or tribunal may act on its own motion, and should do so when the lack of jurisdiction is called to its attention. . . . The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage in the proceedings. . . .

"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that

judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy. . . . The requirement of directness between the injuries claimed by the plaintiff and the conduct of the defendant also is expressed, in our standing jurisprudence, by the focus on whether the plaintiff is the proper party to assert the claim at issue. . . .

"Two broad yet distinct categories of aggrievement exist, classical and statutory. . . . Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the [controversy], as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the [alleged conduct] has specially and injuriously affected that specific personal or legal interest. . . .

"Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Citations omitted; internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves*, supra, 262 Conn. 485–87.

"[Section] 22a-16 provides broadly that any person . . . [or] corporation . . . may maintain an action . . . for declaratory and equitable relief against the state, any political subdivision thereof, any instrumentality or agency of the state or of a political subdivision

thereof, any person, partnership, corporation, association, organization or other legal entity, acting alone, or in combination with others, for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction . . . . Inasmuch as § 22a-16 affords standing to any person or corporation, the plaintiff indisputably comes within the statute's purview. Indeed, [t]his court . . . has recognized no restriction on the class of persons with standing to seek relief under § 22a-16. . . .

"Our inquiry into whether the plaintiff has standing under § 22a-16 is not complete, however. It is settled that the existence of statutory standing depends on whether the interest sought to be protected by the [plaintiff] is arguably within the zone of interests to be protected or regulated by the statute . . . . Under § 22a-16, standing . . . is conferred only to protect the natural resources of the state from pollution or destruction. . . . Accordingly, all that is required to invoke the jurisdiction of the Superior Court under § 22a-16 is a colorable claim, by any person [or entity] against any person [or entity], of conduct resulting in harm to one or more of the natural resources of this state. . . . Although it is true, of course, that the plaintiff need not prove its case at this stage of the proceedings . . . the plaintiff nevertheless must articulate a colorable claim of unreasonable pollution, impairment or destruction of the environment." (Citations omitted; internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *New London,* supra, 265 Conn. 431–32.

"A complaint does not sufficiently allege standing [however] by merely reciting the provisions of § 22a-16, but must set forth facts to support an inference that unreasonable pollution, impairment or destruction of a natural resource will probably result from the chal-

lenged activities unless remedial measures are taken." (Internal quotation marks omitted.) Id., 433.

With these principles in mind, we conclude that the plaintiff in the present case has made a colorable claim of unreasonable harm to the environment sufficient to establish its standing to seek relief under § 22a-16. The complaint contains allegations of fact sufficient to support an inference that the implementation of the development plan would pose a risk of unreasonable harm to the Thames River and adjacent bodies of water through contaminated storm water runoff, to the wildlife in the Thames River and adjacent bodies of water, to the air around the Fort Trumbull area through emissions from increased traffic, and to undeveloped land within the development plan area.

In support of its claim to the contrary, the corporation contends that the plaintiff has made "only generic and conclusory statements with regard to the adequacy of the storm water system and provides no baseline or frame of reference from which the court could determine whether the alleged pollution is unreasonable." The plaintiff, however, is not required to prove at this stage of the proceedings that the pollution is unreasonable. It is merely required to make a colorable claim of unreasonable pollution. Accordingly, we reject this claim by the corporation.

The corporation also contends that the plaintiff has failed to make a colorable claim that the defendants are causing or will cause unreasonable pollution because "[t]he [development plan] is merely a plan; it is not conduct. It is not contested that third party developers will construct the buildings that will draw additional traffic to the site. Rather than asking the court to order the defendants to cease and desist from harmful conduct, the plaintiff is asking the court to have the defendants mitigate pollution caused by third parties to a

greater degree than already contemplated." In support of this claim, the corporation quotes our statement in *Fort Trumbull Conservancy, LLC* v. *Alves*, supra, 262 Conn. 500, that "[n]othing in the act authorizes the issuance of an injunction against lawful, nonpolluting conduct merely because that conduct constitutes, as a practical or legal matter, a condition antecedent to the alleged harmful conduct of another person."

We are not persuaded. In *Alves*, the plaintiff had brought an action against the city, the corporation and the city's building official seeking, inter alia, a declaratory judgment that the building official must consider the environmental impact of issuing demolition permits to the corporation for the destruction of thirty-nine buildings owned by the city and an injunction against the issuance of the permits. Id., 482–83. This court concluded that the declaratory relief could not be granted because the building official had no authority to consider the environmental ramifications of issuing the permits; id., 499; and, in the absence of any allegation that the building official would violate some legal duty by issuing the permits, the injunction could not be granted because the mere existence of a " 'but for' " relationship between the issuance of the demolition permits and the allegedly harmful conduct was not sufficient to establish a cause of action. Id., 500–501. Accordingly, we concluded that the claim against the building official properly was subject to a motion to strike. Id., 501–502. We also concluded that the plaintiff had viable claims against the city and the corporation and, if the plaintiff were able to establish that the corporation's destruction of the buildings would result in unreasonable harm to the environment, then the corporation could be enjoined from demolishing them regardless of whether the building official had issued the demolition permits. Id., 502.

In the present case, the plaintiff has alleged far more than a mere "but for" relationship between the defendants' conduct and the resulting unreasonable harm to the environment. The plaintiff has alleged that various of the defendants initiated, prepared, approved, funded and implemented the development plan and that, in engaging in all of these activities, they had a legal duty, arising from a variety of state statutes and regulations, to consider whether the plan would cause unreasonable harm to the natural resources of the state. The plaintiff also has alleged that the defendants "have entered or intend to enter into agreement(s) to permit the defendants or others to develop a parcel or parcels of real property" located within the development plan area. It is reasonable to infer from these allegations that the corporation or the city, or both, own or control the property that is subject to the development plan.

Thus, unlike the building official in *Alves*, all of the defendants in the present case have either a direct involvement in the conduct that allegedly will result in unreasonable harm to the environment or a duty to consider whether that conduct will result in unreasonable harm to the environment, or both. Nothing in *Alves* was intended to suggest that a plaintiff cannot challenge an official plan to engage in conduct that allegedly will result in unreasonable pollution under § 22a-16 before the harm actually occurs.[11] The issue in *Alves* was, in effect, whether the building official was a proper *party* to the action, and the controlling factor in our determination that he was not was the absence of any legal duty on his part to consider the environmental impact of the destruction of the buildings. Accordingly, *Alves* is inapplicable here.

[11] Indeed, the corporation's view that it must be allowed to transfer the properties in the development area to developers and those developers must begin the permitting process *before* the plaintiff can challenge the development plan hardly seems fair to potential developers.

Finally, the corporation contends that "the plaintiff lacked standing to bring [count two of the complaint] because its allegations amounted to a claim that the applicant had violated certain statutes rather than a claim of direct harm to the environment." In support of this claim, the corporation cites our previously quoted statement in *Lewis* v. *Planning & Zoning Commission*, 275 Conn. 383, 393, 880 A.2d 865 (2005), that "a claim that conduct is not properly authorized does not necessarily establish that the conduct causes unreasonable pollution under [the act]." (Internal quotation marks omitted.)

The corporation is correct that the mere allegation that a defendant has failed to comply with certain technical or procedural requirements of a statute imposing environmental standards does not, in and of itself, give rise to a colorable claim of unreasonable pollution under the act. See id., 393–94. A claim that the defendant has violated the *substantive* provisions of such a statute, however, may give rise to an inference that the conduct causes unreasonable pollution. See *Waterbury* v. *Washington*, 260 Conn. 506, 557, 800 A.2d 1102 (2002) ("when there is an environmental legislative and regulatory scheme in place that specifically governs the conduct that the plaintiff claims constitutes an unreasonable impairment under [the act], whether the conduct is unreasonable under [the act] will depend on whether it complies with that scheme").

We recognize that the complaint in the present case is not a model of clarity. We further recognize that those portions of count two claiming " 'per se' environmental harm and violation of [the act]"[12] that are not entirely

---

[12] The plaintiff stated at oral argument before this court that its claims in count two of "per se" pollution under the act derive from this court's statement in *Fort Trumbull Conservancy, LLC* v. *Alves*, supra, 262 Conn. 502, that "[w]e express no opinion in this case as to the scope of the city's responsibilities for disposal of the demolition debris under [General Statutes] § 22a-220 [governing disposal of solid waste] or whether proof of a violation of that statute would establish a per se violation of the act." That statement

duplicative of count one appear to allege mere procedural and technical violations of the cited statutes. Because the complaint is not entirely clear,[13] however, we conclude that, rather than dismissing count two, the better course would be for the corporation to file a request to revise the second count to clarify whether the various claims relate to the violation of substantive regulatory standards and to delete the portions that do not. Accordingly, we reject the corporation's claim that the plaintiff lacked standing to bring count two of the complaint.

II

We next address the defendants' claimed alternate ground for affirmance that the case is moot because 80 percent of the recommendations in the environmental impact evaluation have been implemented and 98 percent of the state funds have been expended. The department and the office (collectively, the state defendants) argue that the case is moot as to them because their involvement in the development plan is virtually complete, and, therefore, no relief against them can be granted. The corporation, the city and the commission join the state defendants' claim that the case is moot because the planning phase of the development plan is complete, and they further argue that the plaintiff's claims relating to the future implementation of the plan

merely reflected our holding in *Washington* v. *Waterbury*, supra, 260 Conn. 557, that the substantive standards of applicable environmental regulations are controlling in determining whether conduct is unreasonable under the act.

[13] For example, the plaintiff alleged that the defendants had failed to "[m]ake valid findings pursuant to [General Statutes] §§ 8-189 and 32-224 that the [development plan] is not inimical to [the state plan of conservation and development, adopted pursuant to General Statutes § 16a-24 et seq.], as the [development plan] fails to promote a balanced response to human, environmental, and economic needs in a manner . . . which best suits the future of Connecticut." This portion of count two may be read as alleging both procedural and substantive violations.

are not ripe because no one is yet engaging in any conduct giving rise to unreasonable harm to the environment. We have rejected the defendants' ripeness claim in part I of this opinion. Accordingly, we consider only whether the plaintiff's claim is moot as to the state defendants. We conclude that the claim is not moot.

The following additional procedural history is relevant to this claim. In support of their motions to dismiss, the state defendants submitted affidavits by Chester D. Camarata, the executive director of the department's office of infrastructure and real estate, and Peter Lent, the assistant executive director of the department's office of business and industry development. Camarata stated in his affidavit that "[n]early 80 [percent] of the mitigation opportunities identified in the [environmental impact evaluation] have been completed." He also stated that "[f]uture development plans for the parcel, which will be carried out by others, will be reviewed for compliance with good engineering practice and consistency with the provisions of the [environmental impact evaluation] through a three-phase design review process conducted through [the corporation and the department] and will also be subject to municipal review requirements." Lent stated in his affidavit that, "[t]o date, [the department and the corporation] have entered into five assistance agreements that provide an aggregate of $73,050,000 in state grants for various project components associated with the [development plan]. To date $71,750,000 have been transferred to the [corporation] for these expenditures. Thus, [the department] has transferred over 98 [percent] of its obligated funding to the [corporation] for the [development plan]."

"Mootness implicates [this] court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requi-

site to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Connecticut Coalition Against Millstone* v. *Rocque*, 267 Conn. 116, 125–26, 836 A.2d 414 (2003).

"As long as there is some . . . injury for which the plaintiff seeks redress, the injury that is alleged need not be great. We have held that standing existed although the injury alleged was extremely small." (Internal quotation marks omitted.) *Maloney* v. *Pac*, 183 Conn. 313, 321, 439 A.2d 349 (1981).

The state defendants argue that, because "their involvement with the [development plan] is both narrow and virtually completed," no practical relief can be provided to the plaintiff and the case is therefore moot as to them. The flaw in this argument is that "virtually completed" does not mean "complete." By the state defendants' own admission, 20 percent of the recommendations contained in the environmental evaluation assessment have yet to be implemented and approximately $1.3 million in state funds have yet to be transferred to the corporation. Moreover, it appears that the state defendants will continue to be involved in the development plan's design review process. The plaintiff has alleged that these activities will contribute to unreasonable harm to the environment and any relief ordered by the trial court potentially could affect all of these matters in which the state defendants have an ongoing

involvement and interest. Accordingly, we conclude that the case is not moot as to the state defendants.

## III

We finally address the state defendants' claimed alternate ground for affirmance that the case should be dismissed because the plaintiff brought it in the wrong venue.[14] The plaintiff contends that the requirement in § 22a-16 that an action be brought in the judicial district of Hartford when the state is "the defendant" applies only when the state is the sole defendant. It further contends that, even if it brought the action in the wrong venue, that defect is not jurisdictional, and the action may be transferred to the judicial district of Hartford. We conclude that the action should have been brought in the judicial district of Hartford, but that the plaintiff's failure to do so did not implicate the trial court's subject matter jurisdiction. We further conclude that the case should be transferred to the judicial district of Hartford.

We first consider the state defendants claim that the plaintiff brought this action in an improper venue under § 22a-16. This issue presents a question of statutory interpretation. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield

---

[14] We note that we declined to reach an identical claim made by the defendant town in *Keeney* v. *Old Saybrook*, 237 Conn. 135, 142 n.7, 676 A.2d 795 (1996), because it was inadequately briefed.

absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Citation omitted; internal quotation marks omitted.) *Cogan* v. *Chase Manhattan Auto Financial Corp.*, 276 Conn. 1, 7, 882 A.2d 597 (2005).

With these principles in mind, we turn to the text of the statute in question. Section 22a-16 provides that the plaintiff "may maintain an action in the superior court for the judicial district wherein the defendant is located, resides or conducts business, except that where the state is the defendant, such action shall be brought in the judicial district of Hartford . . . ." The plaintiff claims that this language clearly and unambiguously limits the venue provision to cases in which the state is the sole defendant. We disagree. The express language of the statute, with its repeated references to "the defendant," simply does not contemplate the contingency of a case with multiple defendants. Accordingly, we conclude that the language of the statute is not clear and unambiguous and we must look further for interpretive guidance.

The legislative history of § 22a-16 is devoid of any discussion of the reasons underlying the statute's venue provision. Accordingly, we consider the legislative policy that the provision was intended to implement. The policy underlying the statute's general venue provision requiring that a plaintiff must bring the action "in the superior court for the judicial district wherein the defendant is located, resides or conducts business"; General Statutes § 22a-16; clearly was to promote the convenience of defendants over the convenience of plaintiffs

when the two are in conflict. It is reasonable to conclude that the exception to this provision when the state is a defendant was intended to recognize that, although the state and its agencies conduct business in every judicial district of the state, the *most* convenient venue for the state is the judicial district of Hartford, where many central state offices and the office of the attorney general are located. It is also reasonable to conclude that this heightened concern with the convenience of the state encompasses an intent to promote the convenience of the state over the convenience of other defendants. Moreover, the legislature reasonably could have concluded that requiring plaintiffs to bring all actions under the act against the state and its agencies in a single venue will allow that venue to acquire a level of experience and expertise in this area of the law, to the benefit of both the state and its people. Accordingly, we conclude that the venue provision of § 22a-16 requiring the plaintiff to bring claims under the act against the state in the judicial district of Hartford applies regardless of whether the state is the sole defendant or one of several defendants.

We next consider whether the venue provision for state defendants is procedural or jurisdictional. "While jurisdiction is the power and authority of the court to act, venue is the place where the power to adjudicate is to be exercised, that is, the place where the suit may or should be heard. The requirements of jurisdiction are grounded in the state's inherent judicial power, while the requirements of venue are grounded in convenience to litigants. Venue does not involve a jurisdictional question but rather a procedural one, and thus is a matter that goes to process rather than substantive rights. Moreover, although a court's lack of subject-matter jurisdiction cannot be waived, improper venue may be waived and may be changed by the consent of the parties." (Internal quotation marks omitted.) *Lebron*

v. *Commissioner of Correction*, 274 Conn. 507, 522, 876 A.2d 1178 (2005).

This court previously has recognized an exception, however, to the general rule that venue is not a jurisdictional matter. In *Farricielli* v. *Personnel Appeal Board*, 186 Conn. 198, 440 A.2d 286 (1982), this court considered whether the venue provision of General Statutes (Rev. to 1977) § 4-183 (b) was jurisdictional or procedural. That statute provided that, when a plaintiff was aggrieved by the final decision of an administrative agency, he or she could seek judicial review by " 'filing a petition in the court of common pleas in the county wherein the aggrieved person resides . . . .' " Id., 200. Instead of filing his appeal in the county where he resided, the plaintiff in *Farricielli* had filed his appeal in the county where the defendant was located. Id. The trial court dismissed the administrative appeal on the ground that the venue provision was jurisdictional, and the plaintiff appealed to this court. Id., 199.

On appeal, the majority of this court stated that "[a]ppeals to courts from administrative agencies exist only under statutory authority. . . . A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Citation omitted; internal quotation marks omitted.) Id., 200–201. The majority further noted that this court previously had held that the timing provisions of § 4-183 (b) were jurisdictional and that failure to comply with them would be fatal to an appeal. Id., 201. The majority concluded that there was "no justification for treating the venue provisions of the same statute any differently." Id. The majority also noted the use of the word "shall" in the venue provision of § 4-183 (b) and concluded that this buttressed a conclusion that it was mandatory. Id., 202–203. Accordingly, the majority concluded that "[t]he venue provisions of § 4-183 (b) are jurisdictional and mandatory, and, if not complied

with, render the appeal subject to abatement." (Internal quotation marks omitted.) Id., 204.

In his dissenting opinion in *Farricielli*, Justice Shea pointed out that "[t]his case marks the first time this court has held that failure to comply with a statutory venue provision constitutes a defect in jurisdiction over the subject matter." Id., 207. In support of his reasoning that this holding was incorrect, he cited the well established rule that "[a] statutory requirement fixing the place where an action must be brought is regarded as existing for the convenience of the litigants and simply confers a privilege not to be required to attend court at a particular location." Id. (*Shea, J.*, dissenting). He also noted that all of the cases cited by the majority in support of its conclusion that strict compliance with the provisions of statutory appeal provisions is required involved "noncompliance with a time specification rather than a designation of court location." Id., 208. He argued that, unlike venue provisions, "[t]ime limitations for taking appeals do not exist merely for the convenience of the parties but involve a strong public interest in the finality of legal proceedings. For this reason they have been generally regarded as jurisdictional." Id. Justice Shea also pointed out that this court previously had rejected a claim that the failure to bring an administrative appeal in the proper court affected the trial court's jurisdiction, that failure being merely a defect " 'in venue, for the Superior Court is one court for the whole state.' " Id., 208–209, quoting *Mower* v. *Dept. of Health*, 108 Conn. 74, 77, 142 A. 473 (1928).

Finally, Justice Shea noted in his dissent that, while the plaintiff's appeal in *Farricielli* was pending in the trial court, the legislature had enacted General Statutes § 51-351, providing that "[n]o cause shall fail on the ground that it has been made returnable to an improper location." See *Farricielli* v. *Personnel Appeal Board*, supra, 186 Conn. 209; Public Acts 1977, No. 77-576,

§ 10. He concluded that the statute was intended to be retroactive; *Farricielli* v. *Personnel Appeal Board,* supra, 210–11 *(Shea, J.,* dissenting); and stated that "[t]here can hardly be any question but that the legislature intended to authorize the transfer of cases such as the [administrative] appeal of this plaintiff in enacting § 51-351, because there is no other established mechanism for implementing this declaration of policy. Already in existence was [General Statutes (Rev. to 1977) § 52-31, the predecessor to General Statutes] § 51-347b which authorized transfer of '[a]ny cause' by order of the court on its own motion or the motion of any party."[15] Id., 210.

In the present case, the state defendants rely on *Farricielli* in support of their claim that, because § 22a-16 creates a cause of action and waives sovereign immu-

---

[15] The majority in *Farricielli* concluded that § 51-351 was not retroactive. *Farricielli* v. *Personnel Appeal Board,* supra, 186 Conn. 205 n.6. As Justice Shea observed in his dissent, however, the majority's conclusion that the trial court was powerless to transfer the case because it had no subject matter jurisdiction necessarily implies that § 51-351 would not apply to appeals brought in the wrong venue under § 4-183 (b) even after its effective date. See id., 209–10; id., 210 *(Shea, J.,* dissenting) ("the position of the majority that a venue defect defeats jurisdiction over the subject matter renders § 51-351 wholly nugatory even in respect to appeals commenced after its effective date"). The Appellate Court directly addressed the question of whether § 51-351 applied to administrative appeals filed after its effective date in *Sprague* v. *Commission on Human Rights & Opportunities,* 3 Conn. App. 484, 486, 489 A.2d 1064, cert. denied, 196 Conn. 804, 492 A.2d 1240 (1985), and concluded that it did. Id., 485–86 (§ 51-351 applied to appeal from ruling by hearing officer of commission on human rights and opportunities pursuant to General Statutes [Rev. to 1983] § 46a-95 [j]); see also *Greenman's Trucking, Inc.* v. *Dept. of Revenue Services,* 6 Conn. App. 261, 263 n.3, 504 A.2d 568 (1986) (§ 51-351 applies to venue provision of General Statutes § 12-422, providing for appeal from decision of commissioner of revenue services). The Appellate Court also appears to have assumed, however, that § 51-351 did *not* supersede the specific holding of *Farricielli* that the venue provision of § 4-183 (b) implicates the trial court's subject matter jurisdiction. See *Neri* v. *Neri,* 35 Conn. App. 812, 817 n.10, 647 A.2d 1, cert. denied, 231 Conn. 916, 648 A.2d 154 (1994); see also *Chestnut Realty, Inc.* v. *Commission on Human Rights & Opportunities,* 201 Conn. 350, 356, 514 A.2d 749 (1986). Because we conclude in the present case that the venue provision of § 22a-

nity, its venue provision must be construed strictly and the trial court has no jurisdiction over an action that has been brought in an improper venue. See *Spears* v. *Garcia*, 263 Conn. 22, 28, 818 A.2d 37 (2003) (statute that creates cause of action that was not available at common law is strictly construed); *Rawling* v. *New Haven*, 206 Conn. 100, 105, 537 A.2d 439 (1988) ("[s]tatutes that abrogate or modify governmental immunity are to be strictly construed"). We conclude, however, that, for the reasons stated by Justice Shea in his dissenting opinion in *Farricielli*, that case was decided wrongly and must be overruled.[16] We now conclude that

16 is not jurisdictional, we need not consider whether § 51-351 would apply to § 22a-16 if it were jurisdictional.

[16] We note that, in *Savage* v. *Aronson*, 214 Conn. 256, 261–62, 571 A.2d 696 (1990), the defendant claimed that the trial court lacked jurisdiction over a cause of action that improperly was placed on the housing docket pursuant to General Statutes § 47a-70 (a), which provides that "[a]ll proceedings involving a housing matter in the judicial district of . . . New Haven . . . shall first be placed on the housing docket for that district . . . ." This court concluded that the claim was "essentially an objection to venue rather than to jurisdiction, because it does not implicate the authority of the Superior Court to entertain the case but involves only the question of whether one division of that court rather than another should properly have heard the case." *Savage* v. *Aronson*, supra, 263. The court in *Savage* quoted Justice Shea's statement in his dissenting opinion in *Farricielli* that statutory venue requirements " 'simply [confer] a privilege not to be required to attend court at a particular location.' " Id., quoting *Farricielli* v. *Personnel Appeal Board*, supra, 186 Conn. 207 (*Shea, J.*, dissenting). Accordingly, the court concluded that the venue provision did not implicate the trial court's subject matter jurisdiction. *Savage* v. *Aronson*, supra, 263.

We also note that this court has quoted with approval Justice Shea's statement in his dissenting opinion in *Andrew Ansaldi Co.* v. *Planning & Zoning Commission*, 207 Conn. 67, 75, 540 A.2d 59 (1988), that " 'I believe this court took the wrong course many years ago when [it] began to treat virtually every deviation from the statutory norm as a defect that deprives a court of subject matter jurisdiction and thus to be unwaivable by the parties or subject to such considerations as lack of prejudice that are applied in other proceedings.' " *Tolly* v. *Dept. of Human Resources*, 225 Conn. 13, 30 n.10, 621 A.2d 719 (1993). In *Tolly*, this court also cited with approval Justice Shea's observation in his dissenting opinion in *Farricielli* that, unlike statutory provisions that are for the convenience of the parties, such as those controlling venue, statutory timing provisions implicate the public interest in the finality of legal proceedings and, therefore, generally are

statutory venue provisions, which are merely for the convenience of the parties, should be presumed not to be jurisdictional in the absence of any clear expression of legislative intent to the contrary. See *Lebron* v. *Commissioner of Correction*, supra, 274 Conn. 522; see also *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 778–79, 900 A.2d 1 (2006) ("in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged" [internal quotation marks omitted]). There simply is no evidence that, in enacting the venue provision of § 4-183, the legislature intended to abrogate the common understanding that venue is not jurisdictional. See *Rumbin* v. *Utica Mutual Ins. Co.*, 254 Conn. 259, 265, 757 A.2d 526 (2000) ("[i]n determining whether . . . a statute abrogates or modifies a common law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope" [internal quotation marks omitted]).

We must conclude, therefore, that the venue provision in § 22a-16, which contains no expression of contrary legislative intent, does not implicate the trial court's subject matter jurisdiction. Indeed, even without a presumption of jurisdiction, it would be difficult for us to conclude that the legislature, which demonstrated its strong commitment to the act's broad remedial goals by expressly *eliminating* such basic jurisdictional requirements as personal aggrievement and exhaustion of all available administrative remedies; see *Waterbury* v. *Washington*, supra, 260 Conn. 537; intended for the statute's venue provision to be jurisdictional. See *Starr* v. *Commissioner of Environmental Protection*, 226 Conn. 358, 382, 627 A.2d 1296 (1993) ("[e]nvironmental

regarded as jurisdictional. See id., 28; *Farricielli* v. *Personnel Appeal Board,* supra, 186 Conn. 208 (*Shea, J.,* dissenting). Thus, the assumptions underlying *Farricielli* previously have been questioned by this court.

statutes, considered remedial in nature, are to be construed liberally to reach the desired result"). Because the venue provision of § 22a-16 is not jurisdictional, the proper remedy under § 51-351 for the plaintiff's failure to bring this action in the correct venue is to transfer the case to the judicial district of Hartford pursuant to General Statutes § 51-347b[17] and Practice Book § 12-1.[18] See *Farricielli* v. *Personnel Appeal Board*, supra, 186 Conn. 210 (*Shea, J.*, dissenting).[19]

The judgment is reversed and the case is remanded to the trial court for further proceedings according to law.

In this opinion the other justices concurred.

[17] General Statutes § 51-347b (a) provides in relevant part: "Any action or the trial of any issue or issues therein may be transferred, by order of the court on its own motion or on the granting of a motion of any of the parties, or by agreement of the parties, from the superior court for one judicial district to the superior court in another court location within the same district or to a superior court location for any other judicial district, upon notice by the clerk to the parties after the order of the court, or upon the filing by the parties of a stipulation signed by them or their attorneys to that effect. . . ."

[18] Practice Book § 12-1 provides: "Any cause, or the trial of any issue therein, may be transferred from a judicial district court location to any other judicial district court location or to any geographical area court location, or from a geographical area court location to any other geographical area court location or to any judicial district court location, by order of a judicial authority (1) upon its own motion or upon the granting of a motion of any of the parties, or (2) upon written agreement of the parties filed with the court."

[19] At the time that *Farricielli* was decided, the predecessor to § 51-347b referred to "[a]ny cause." General Statutes (Rev. to 1977) § 52-31; see *Farricielli* v. *Personnel Appeal Board*, supra, 186 Conn. 210 (*Shea, J.*, dissenting). Justice Shea argued in his dissent that the term "cause," as distinct from the word "action," was broad enough to include administrative appeals. *Farricielli* v. *Personnel Appeal Board*, supra, 210. In 1982, § 51-347b was amended to refer to "[a]ny action . . . ." Public Acts 1982, No. 82-248, § 157; see footnote 15 of this opinion. Regardless of whether the phrase "[a]ny action" in § 51-347b includes administrative appeals, it clearly includes actions brought pursuant to § 22a-16. We are persuaded by Justice Shea's argument that § 51-347b provides the sole "established mechanism for implementing [the] declaration of policy" in § 51-351. *Farricielli* v. *Personnel Appeal Board*, supra, 210 (*Shea, J.*, dissenting).